**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NOVA DESIGN BUILD, INC., and ANNEX BUILDERS LLC, | ) | Civil Action  **08 C 2855** |
| Plaintiffs, | ) | |
| | ) | Hon. Samuel Der-Yeghiyan |
| v. | ) | |
| GRACE HOTELS, LLC, MUKESH BHEDA LYONS DESIGN GROUP, INC., ADAM LYONS, ROBERT WALZ, JS CAPITAL CONSTRUCTION, INC, and JEFF SCHMITZ, | ) | Magistrate Judge Valdez |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

# GRACE HOTELS ET AL MOTION TO DISMISS

Defendants Grace Hotels, LLC ("Grace"), Mukesh Bheda ("Bheda"), Robert Walz ("Walz"), JS Capitol Construction, Inc. ("Capital," named incorrectly in the Complaint) and Jeff Schmitz ("Schmitz") respectfully move this Court to dismiss the Complaint, by Plaintiffs, Nova Design Build, Inc., ("Nova"), and Annex Builders LLC ("Annex"), for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Specifically, the copyright registration of Plaintiff is invalid—its subsublicense to make a limited derivative work from the proprietary Holiday Inn Express Prototype drawings excluded any right to register a copyright in a derivative work. The deceptive-source claim is meritless under the mandate of the US Supreme Court in *Daystar v 20th Century Fox Film Corp*. (123 S Ct 2041, 2003). Moreover, Plaintiffs waived in writing any interest in continuing with the construction project, thus no tortious interference, and notified the City of Waukegan that Plaintiff was no longer involved in the project; source confusion is impossible. The breach of contract and misappropriation claims fail due to accord and satisfaction, as well as a written settlement. All counts should be dismissed.

## PLAINTIFF'S SUBSUBLICENSE TO MAKE DERIVATIVES OF HOLIDAY INN EXPRESS PROTOTYPE PLANS EXCLUDES ANY RIGHT TO REGISTER A COPYRIGHT IN PLAINTIFF'S DERIVATIVES

Defendant Grace Hotels is licensed by Holiday Hospitality Franchising, Inc. (HHF)—an affiliate of Six Continents Hotels, Inc.(SCH) and InterContinental Hotels Group (IHG)—to build and operate a Holiday Inn Express (HIE) motel in Waukegan IL using SCH's proprietary prototype architectural drawings (Exhibit G-001a, HIE Franchise License Agreement; Bheda Decln. ¶3; Moore Decln. ¶¶3, 8). SCH owns the copyrights to its Holiday Inn Express prototype architectural drawings (Moore Decln ¶8). SCH owns the trademarks for several famous hotel brands, including HOLIDAY INN and HOLIDAY INN EXPRESS (Id. ¶3). SCH and HHF are companies in the InterContinental Hotels Group (Id. ¶3; Exhibit G-001a, ¶1).

To ensure consistency with HOLIDAY INN and HOLIDAY INN EXPRESS design and construction brand standards, IHG provides prototype architectural drawings to franchisees (Id. ¶7; Exhibit G-002a). As of the end of February 2008 in IHG's Americas Region (North, Central and South America), there were over 1,600 HOLIDAY INN EXPRESS hotels, with over 135,000 rooms (Moore Decln. ¶4). The HOLIDAY INN brand was founded in 1952 (Id. ¶5).

SCH's prototype architectural drawings generally carry a proprietary and copyright notice, such as (Id. ¶9; Exhibit G-002b):

> © 2003 InterContinental Hotels Group. ALL RIGHTS RESERVED. CONFIDENTIAL AND PROPRIETARY. DO NOT MODIFY, DUPLICATE, REPRODUCE, DISCLOSE OR TRANSFER THESE MATERIALS WITHOUT THE EXPRESS WRITTEN PERMISSION OF InterContinental Hotels Group.

IHG generally permits franchisees to use its prototype architectural drawings in building new hotels, including allowing franchisees to propose modifications for particular site or local condition suitability (Moore Decln. ¶10). IHG does not generally permit franchisees or their

agents to register a copyright claim based in any part on a work derived from IHG proprietary drawings (Id. ¶11).

IHG has not authorized Himanshu J. Modi (Plaintiffs' principal), Nova Design Build, Inc. nor Annex Builders LLC to register any copyright claim based in whole or part on any IHG proprietary drawing (Id. ¶ 12). The copyright application signed by Himanshu J Modi and dated September 26, 2007 for "Motel Project-I" was not authorized by any company in IHG (Id. ¶13). Without approval from the owner of the underlying work, approval that is totally absent here, Nova/Modi could not obtain a copyright on its derivative work. *Schrock v Learning Curve International, Inc.*, 85 USPQ2d 1670, 1676 (ND IL, 2008) (J. Shadur).

## PLAINTIFFS HAVE NO COPYRIGHT CLAIM

One of the exclusive rights of the copyright owner is to do and to authorize another "to prepare derivative works based upon the copyright work" 17 USC ¶106(2). Plaintiff Nova and/or its principal Modi were at most authorized to make derivative architectural drawings for franchisee Grace but were not authorized to register any copyright claim. Beyond the straightforward contract principle, the owner of a copyrighted prototype work, here a Holiday Inn company, may well decide it does not wish to subject its intellectual property to a variety of challenges in a variety of jurisdictions by unauthorized and disgruntled discharged architects and others.

No action for copyright infringement in any United States work shall be instituted until registration of the copyright claim has been made in accord with the Copyright Act (17 USC §411). Plaintiff Nova and its agent Modi had no right to apply for copyright registration[1].

---

[1] Plaintiffs have had more than half-a-year since filing the Complaint in the earlier case, 07 C 6369, "*Nova 1*,"

Although a copyright registration constitutes prima facie evidence of copyright validity, that is nothing more than "simply a rebuttable presumption." Here that presumption of copyright has been thoroughly rebutted. Thus lacking a valid copyright in the work, Plaintiffs/Modi also, by definition, lack the ability to maintain a suit for copyright infringement. *Schrock v Learning Curve International, Inc.*, 85 USPQ2d 1670, 1676 (ND IL, 2008) (J. Shadur).

## PLAINTIFF'S COPYRIGHT REGISTRATION IS INVALID

Plaintiff Nova and its principal Himanshu Modi had no lawful right to apply to register a copyright claim in their admittedly derivative work.

Moreover, the statutory requirements for the application for copyright registration requires, inter alia, for a derivative work, "an identification of any preexisting work or works that it is based on or incorporates" (17 USC ¶409 (9). Plaintiff's application and registration do not *identify* the preexisting work, although it is manifestly SCH's Holiday Inn Express prototype architectural drawings.

More accurately, Plaintiff's claimed copyright is based on both the SCH Holiday Inn Express Prototype drawings and also the drawings of Grace (Exhibits G-009 - 013l; Bheda Decln. ¶¶ 12-15). Neither author Grace nor proprietary owner SCH authorized Nova Design nor Annex Builders nor Himanshu Modi to apply for copyright registration of any work based in whole or part on any proprietary drawing of Grace or of its Holiday Inn Licensor or any entity in the InterContinental Hotels Group (Bheda Decln. ¶14; Moore Decln, ¶¶ 11-13). In an attempt to surreptitiously sidestep the statutory requirements, applicant Modi intentionally identified the

---

November 9, 2007 to review their evidence and ensure compliance with Fed.R.Civ.P. 11. Yet Plaintiffs' principal, Himarshu Modi now claims he personally, not Plaintiff Nova Design, owns the copyright to the Motel Project -1 (revised) work (Exhibit G-020; cf. Exhibit G-017). It appears Nova also is in violation of the Illinois Architecture Practice Act, which requires design firms to register with the Illinois Division of Professional Regulation, 225 ILCS 304; Exhibit G-021 (neither Nova Design Build nor any other Nova firm in Northbrook IL licensed).

drawings of neither SCH/InterContinental nor Grace as the works upon which Plaintiff based its drawing.

Modi's first copyright application had multiple errors, for the *Nova 1* case (Exhibit G-017). Among others, it denied being a work for hire and claimed Modi was the author, not Nova. The change in copyright claimant was not made to the Copyright Office until months after suit was filed and after Plaintiffs filed their motion for preliminary injunction in *Nova 1*, months after Defendants had spent significant time and money investigating the copyright claims of Modi and Plaintiffs. Apparently Modi's second copyright application, filed after Plaintiffs were represented by counsel, covering apparently the same project (Exhibit G-020), makes a copyright claim directly inconsistent with Nova's claim. Defendants' inability to know even the basic allegations of a copyright suit until after complaint and preliminary injunction motion were filed in *Nova 1* is strong evidence of the wisdom of requiring a copyright registration to be *issued* before filing suit, rather than assuming that a filed application will issue and will issue as originally applied.

## *DAYSTAR* MANDATES NO LANHAM-TYPE AUTHORSHIP MISATTRIBUTION

Plaintiffs claim deceptive trade practice under the Illinois Uniform Deceptive Trade Practices Act (Count VI). Even if there were authorship misattribution, such claims are not countenanced under trademark, unfair competition, deceptive trade practices and similar laws. However, there is no misattribution by Grace and defendants. The name on architectural drawings is the name of the last professional to have worked on them, the entity who took responsibility for them. Just as Plaintiffs on their drawings did not credit the prior authorship of Grace nor of InterContential/SCH, professionals assuming responsibility after Nova for drawings had no legal, moral, or practical reason to include Nova nor Modi names. Likewise, if Plaintiff

reviewed, sealed, and submitted a drawing, such was the last entity to do so. The name in the title block may not be the copyright claimant nor the currently employed professional.

The City of Waukegan could not be confused as to the origin of and authority to use the Holiday Inn Express drawings, since Plaintiffs' principal Modi explicitly notified the City of Waukegan "my office has withdrawn completely from the project" (Exhibit G-016). Neither could CIT Lending Services be confused: "Nova Design Build, Inc. has withdrawn from the project." Id. Plaintiffs only allege confusion by the City of Waukegan; Plaintiff clearly notified the City of Waukegan it was no longer responsible for the drawings. Source confusion was impossible. There was no passing off goods or services as those of another (IDTPA, 815 ILCS 510/ 2(a)(1)). There was no likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification or goods or services, nor of affiliation, connection, or association with or certification by another. (Id. at § 510/ 2(a)(2) & (3).

Plaintiffs sell their design services, they did not sell Grace nor any other defendant a good (Exhibit G-003, "Design and Drawings—Services with a lump sum fee). The United States Supreme Court has held that the "origin of goods" in the Lanham Act is incapable of connoting the person or entity that originated the ideas that "goods" embody or contain. *Dastar Corp. v Twentieth Century Fox Film Corp.*, 539 US 23 (2003). If anyone has a claim to being the original creator of the Holiday Inn Express-Waukegan plans, it would be IHG/SCH, not Plaintiffs nor Modi. Id. at 35.

Even if there were a copyright infringement, an infringement of a copyright does not necessarily create confusion as to the endorsement of one's products or the affiliation between two entities. *Weidner v Carroll*, 2007 WL 2893637 (SD IL). Grace's Holiday Inn Express project is most unlike a consumer product or even sales of residential housing (*Stephen & Hayes*

*Construction, Inc. v Meadowbrook Homes, Inc.*, 988 FSupp 1194 (ND IL 1998) (J. Alesia), Plaintiffs allege the only person potentially confused or passed-off-upon was the City of Waukegan, and it was not confused (Exhibit G-016).

## NO MISAPPROPRIATION OF HOLIDAY INN PROPERTY

Plaintiffs allege defendants Grace, Walz, Lyons Design, and Capitol used designs and drawings to compete with Nova (Count V). But the drawings Modi/Nova prepared inured to the benefit of Holiday Hospitality Franchising, Inc. and InterContinental Hotel Group, licensed in turn to Grace and its sublicensed agents (Exhibit G-001a p. 11; "all improvements and additions whenever made to or associated with the System by the parties hereto or anyone else, and all…copyrights,…at any time used, applied for or granted in connection with the System…shall inure to the benefit of and become the property of Licensor").

Modi and Plaintiffs never had a right to claim ownership in their derivative works. Moreover, the right of Modi and Plaintiffs to use the derivative works ceased when their work for and subsublicense from Grace terminated.

## ACCORD AND SATISFACTION DEFEAT CONTRACT CLAIMS

Plaintiffs allege breach of contract (Counts III and IV), but Plaintiffs admit Nova was paid on its contract (Complaint ¶ 42; Exhibit G-004, G-005). Plaintiffs' principal Modi fully settled all claims (Exhibit G-005, "you [Modi] agree to waive your invoice dated October 13, 2006, for extra work, which invoice is in the sum of $10,202.50"; cf. Complaint § 42, $10,000). Unlike many other architect disputes, Plaintiffs did not use a standard American Institute of Architecture (AIA) contract (Exhibit G-003). Cf. *Johnson v Jones,* 149 F3d 494 (6th Cir. 1998).

## PLAINTIFFS EXPLICITLY RENOUNCED ANY INTEREST IN CONSTRUCTION

Modi, for Plaintiffs Nova and Annex, explicitly disclaimed any interest in construction of Grace's project (Exhibit G-006, "Nova Capital Design Build LLC, Annex Builders, ICG NOT INTERESTED IN CONSTRUCTION of H.I.Exp. Lakehurst Road Waukegan Il). Thus Plaintiffs could have no reasonable expectation of recouping profits though the award of the construction contract (cf. Complaint ¶ 87).

## DEFENDANTS' USE OF HOLIDAY INN'S DRAWINGS WAS LICENSED

The drawings Plaintiffs/Modi claim to be their proprietary property are owned by a Holiday Inn company, not by Plaintiffs nor Modi (Exhibit G-001a p. 11; Moore Decln. ¶ 8) and carried a clear proprietary notice (Id. ¶9). Not only the original HIE Prototype but also its derivative works are owned by a Holiday Inn company, not Plaintiffs nor Modi (Exhibit G-001a p. 11). Moreover, Plaintiffs and Modi were not authorized to apply to register any copyright claim in the Holiday Inn derivative works (Id. ¶¶ 10-13). Even ignoring that Plaintiffs have no ownership rights in their claimed drawings, the Lyons Defendants have concurrently briefed that at the least Defendants' use of Plaintiff's drawings was licensed to complete the Holiday Inn Express construction. *IAE, Inc. v Shaver,* 74 F3d 768, 37 USPQ2d 1436 (7th Cir. 1996) (implied license to use discharged architect's design to complete project).

## COPYRIGHT REGISTRATION CANCELLATION

Neither Nova nor Modi were authorized to own works derivative of the Holiday Inn

Express Prototype. Neither Nova nor Modi were authorized to apply for registration of a copyright in works derivative of the Holiday Inn Express Prototype. While a court generally may not cancel a copyright registration, a court may declare a copyright registration invalid and may order a party to promptly inform the Copyright Office of the Court's holding invalid a copyright registration and to request its prompt cancellation. *Leegin Creative Leather Prods. v M.M. Rogers & Co.,* 33 USPQ2d 1158 (CD CA 1994); *Tiseo Architects, Inc. v SSOE, Inc.,* 431 FSupp2d 735, 80 USPQ2d 1741 (ED MI).

## ATTORNEYS' FEES AND COSTS

Prevailing parties are presumptively entitled to reimbursement of attorneys' fees. *Fogerty v Fantasy, Inc.,* 510 US 517 (1994); *Riviera Distributors, Inc. v Jones,* (06-2045 & 06-3692, 7th Cir. 2008); 17 USC § 505. For prevailing defendants, the presumption is "very strong" *Mostly Memories, Inc. v For Your Ease Only, Inc.,* 2008 WL 2168642, (7th Cir. 2008). Plaintiffs' conduct need not be sanctionable for Defendants to be entitled to attorneys' fees under 17 USC § 505. Id.

Grace settled with Nova its asserted contract claim. Plaintiffs rushed to file *Nova 1* before the copyright application of Modi matured into a registration. *Nova 1; La Resolana Architects, PA v Clay Realtors Angel Fire,* 416 F3d 1195 (10th Cir. 2005). Defendants had to research and defend against the *Nova 1* counts while Plaintiffs learned that copyright ownership claims to the Copyright Office and plaintiff identification in a complaint should be aligned. Plaintiffs and their principal have ignored the clear proprietary notices of the Holiday Inn Express Prototype drawings, that derivatives are not authorized without express written permission. *Nova 2* hardly manifests reasonable inquiry into the facts and law, especially after discussions with defendants'

counsel during *Nova 1*.

Plaintiffs Complaint in *Nova 1* was tainted by unsettled jurisdictional defect. 17 USC § 411; *Nova 1*. There is now jurisdiction for *Nova 2,* since a copyright registration has issued (Exhibit G-018). However the legal claims of *Nova 2* are as baseless as the virtual identical claims of *Nova 1*. Plaintiffs and Modi sought the wrong forum for their unhappiness. By filing two suits, Plaintiffs forced Defendants to bear expenses that Nova and Grace had agreed by settlement to avoid (Exhibit G-005, G-006) *Riviera Distributors* at 5). The party responsible for creating excessive legal costs must bear them itself in the end. Id.

## CONCLUSION

Plaintiffs do not own the copyright Nova/Modi claims. There can be no source-confusion when Nova clearly notified the City of Waukegan that it had completely withdrawn from the Holiday Inn Express project. There is no deception when construction drawings show the name of the last professional to review and seal them. There is no breach of contract when the agreed amount is paid in full, nor after explicit settlement of money claims. There is no misappropriation when Grace uses drawings owned by Licensor Holiday Inn. There are no grounds for injunctive relief when Plaintiffs have no claim upon which relief can be granted. Moreover, the requested injunction would harm significant interests of nonparties. *Balsamo/Olson Group, Inc. v Bradley Place Limited Partnership,* 966 FSupp 757, 43 USPQ2d 1760 (CD IL 1996). This *Nova 2* suit, and its earlier echo *Nova 1*, should never have been filed.

Wherefore, Grace and its co-moving defendants respectfully request the Court:

A. Dismiss with prejudice all counts of the Complaint;

B. As prevailing parties in a copyright action, award Grace and its co-moving defendants their reasonable attorneys' and legal assistants' fees, expenses, and costs in this action;

C. Award Grace and its co-moving defendants their attorneys' and legal assistants' fees, expenses, and costs from the *Nova 1* case;

D. Hold Nova's Copyright Registration VA 1,627,430 invalid and order Nova and its principal Modi to promptly request the Copyright Office cancel the registration.

E. Hold Modi's Copyright Registration VA 1,631,018 invalid and order Nova and its principal Modi to promptly request the Copyright Office cancel the registration

F. Such additional relief as the Court deems just and proper.

Respectfully submitted,

GRACE HOTELS, LLC, MUKESH BHEDA,
ROBERT WALZ, JS CAPITOL CONSTRUCTION,
INC., and JEFF SCHMITZ

By:  /s/ Daniel L. Kegan
Daniel L. Kegan (IL ARCD 6187669)
Kegan & Kegan, Ltd.
79 W Monroe St #1320
Chicago IL 60603-4969
312-782-6495

## AUTHORITIES CITED

*Balsamo/Olson Group, Inc. v Bradley Place Limited Partnership,* 966 FSupp 757, 43 USPQ2d 1760 (CD IL 1996).

*Daystar v 20th Century Fox Film Corp.* (123 S Ct 2041, 2003).

*Fogerty v Fantasy, Inc.,* 510 US 517 (1994).

*IAE, Inc. v Shaver,* 74 F3d 768, 37 USPQ2d 1436 (7th Cir. 1996).

*Johnson v Jones,* 149 F3d 494 (6th Cir. 1998).

*La Resolana Architects, PA v Clay Realtors Angel Fire,* 416 F3d 1195 (10th Cir. 2005)

*Leegin Creative Leather Prods. v. M.M. Rogers & Co.,* 1994 WL 761725, 33 USPQ2d 1158 (CD CA 1994).

*Mostly Memories, Inc. v For Your Ease Only, Inc.,* 2008 WL 2168642, (7th Cir. 2008).

*Riviera Distributors, Inc. v Jones,* (06-2045 & 06-3692, 7th Cir. 2008).

*Schrock v Learning Curve International, Inc.,* 85 USPQ2d 1670 (ND IL, 2008) (J. Shadur).

*Stephen & Hayes Construction, Inc. v Meadowbrook Homes, Inc.,* 988 FSupp 1194 (ND IL 1998) (J. Alesia).

*Tiseo Architects, Inc v SSOE, Inc.,* 431 FSupp2d 735, 80 USPQ2d 1741 (ED MI).

*Weidner v Carroll,* 2007 WL 2893637 (ND IL).

17 USC §§ 411, 505.
37 CFR § 201.7 (Cancellation of Copyright Registrations).
225 ILCS 304, Illinois Architecture Practice Act.
815 ILCS 510/ 2(a)(1) - (3).
FRCP 11, 12(b)(6).

## EXHIBITS

| | | |
|---|---|---|
| G-001a | Holiday Inn Express New Development License Agreement (selections) | 28 Dec 2005 |
| G-002a&b | Holiday Inn Express Prototype Straight Pavilion (selections) | Sept 2003 |
| G-003 | Nova Design Build Agreement for Architectural Services | 18 Mar 2006 |
| G-004 | Grace Hotels Payments to Nova Design | Mar 2006 - Apr 2007 |
| G-005 | Settlement Agreement Memorialized | 13 Nov 2006 |
| G-006 | Plaintiffs Waiver, Not Interested in Construction | 13 Nov 2006 |
| G-008 | Photo of Holiday Inn Express Waukegan April08 | 27 April 2008 |
| G-009 | Grace Sketch of Hotel Site | 28 Dec 2005 |
| G-010 | Grace Sketch of Hotel Functional Areas | |
| G-011 | Grace Initial Formal Layout Drawing | |
| G-012 | Grace Formal Layout Based on HIE Standard | |
| G-013 | Grace Room Counts | |
| G-014 | Gewalt Hamilton Construction, Lakehurst Mall Hotel, Site Plan | 6 June 2006 |
| G-015 | Waukegan Letter—Site Plan Approved | 10 Feb 2006 |
| G-016 | Nova Design Build Withdrawal Notice to CIT Lending Services | 28 Sept 2007 |
| | Nova Design Build Withdrawal Notice to City of Waukegan | 24 Sept 2007 |
| G-017 | Modi Copyright Application, Motel Project-1 | 26 Sept 2007 |
| G-018 | Nova Design Build Copyright Registration VA 1,627,430 | 28 Sept 2007 |
| G-020 | Modi Copyright Registration, Motel Project-1R, VA 1,631,018 | 7 Jan 2008 |
| G-021 | Illinois Design Firm Professional Registration- Plaintiff Nova Unlicensed | 7 June 2008 |
| | G-007 & -019 Reserved | |

**Declarations**

| | |
|---|---|
| Mukesh Behda | June 2008 |
| Harshad Jani | June 2008 |
| Daniel Kegan | June 2008 |
| D Franklin Moore, Jr. | April 2008 |

**Non-West Printed Cases**

*Riviera Distributors, Inc. v Jones,* (06-2045 & 06-3692, 7th Cir. 2008).
*Schrock v Learning Curve International, Inc.,* 85 USPQ2d 1670 (ND IL, 2008).
*Weidner v Carroll,* 2007 WL 2893637 (ND IL).

# Exhibit

# G-001

LOCATION:  Intersection of Lakehurst Road
                    and Lakehurst Drive
                    Waukegan, IL 60085

LOCATION #:  6679

DATE:  _December 28, 2005_

## HOLIDAY HOSPITALITY FRANCHISING, INC.

## HOLIDAY INN EXPRESS® HOTEL & SUITES HOTEL
### NEW DEVELOPMENT
### LICENSE AGREEMENT

### WITH



## GRACE HOTELS LLC

### LICENSEE

i



DEFENDANT'S
EXHIBIT
G-001a

**Holiday Hospitality Franchising, Inc.**
**Three Ravinia Drive, Atlanta, Georgia  30346**

**License Agreement**



This License dated ___December 28, 2005___ , 2005 (the "Term Commencement Date"), between Holiday Hospitality Franchising, Inc., a Delaware corporation ("Licensor"), and Grace Hotels LLC, a limited liability company ("Licensee") whose address is 3223 Border Road, Geneva, IL 60134.

**The Parties Agree As Follows:**

## 1.   THE LICENSE:

Licensor operates and licenses a system designed to provide a distinctive, high quality hotel service to the public under the names "Crowne Plaza®" and "Holiday Inn®" (the "System"). High standards established by Licensor are the essence of the System. Future investments may be required of Licensee under this License Agreement ("License"). Licensee has independently investigated the risks of the business to be operated hereunder, including current and potential market conditions, competitive factors and risks; has read Licensor's Uniform Franchise Offering Circular for prospective Holiday Inn, Holiday Inn Express and Crowne Plaza brand group franchisees ("UFOC"); and has made an independent evaluation of all such facts.  Neither Licensor nor any other person on Licensor's behalf has made any representation to Licensee concerning this License not fully set forth herein. Aware of the relevant facts, Licensee desires to enter into this License in order to obtain a license to use the System in the operation of the specific brand of hotel identified in paragraph 15.A(1) below located at the Intersection of Lakehurst Road and Lakehurst Drive, Waukegan, IL 60085 (the "Hotel").

### A.   The Hotel:

The Hotel comprises all structures, facilities, appurtenances, furniture, fixtures, equipment, and entry, exit, parking and other areas from time to time located on the land identified by Licensee to Licensor in anticipation of this License, or located on any land from time to time approved by Licensor for additions, signs or other facilities.  The Hotel now includes the facilities listed on Attachment "A" hereto. No change in the number of approved guest rooms or suites and no other significant change in the Hotel or in the manner in which the Hotel rooms and services are offered to the public (including timesharing and condominium Hotel projects not involving short term stays by transient guests) may be made without Licensor's approval.  Licensee represents that it is entitled to possession of the Hotel during the entire license term without restrictions that would interfere with anything contemplated in this License. Throughout this License, the words "room" and "guest room" are intended to include the word "suites" unless otherwise indicated.

## B.    The System:

The System is composed of all elements which are designed to identify Holiday Inn hotels and/or Crowne Plaza hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by Licensor. The System at present includes, but is not limited to, the service marks Holiday Inn®, Holiday Inn Garden Court℠, Crowne Plaza®, Holiday Inn Express®, Holiday Inn Express® Hotel & Suites, Holiday Inn® Hotel & Suites, Holiday Inn Select®, Holiday Inn SunSpree®, Holiday Inn® Resort, Holiday Inn Family Suites Resort®, Crowne Plaza® Suites, Crowne Plaza® Resort, and Staybridge Suites® by Holiday Inn® (as appropriate to the specific hotel operation to which it pertains), Holidex® and such other service marks and such copyrights, trademarks and similar intellectual property rights made available to licensees of the System and made available to Licensee by reason of this License; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by Licensor in accordance with Licensor's specifications to be part of the System; access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials; the furnishing of training programs and materials; confidential or proprietary information standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and other requirements as stated or referred to in this License and from time to time in Licensor's Standards Manual (the "Manual") or in other communications to Licensee; and programs for inspecting the Hotel, measuring and assessing service, quality and consumer opinion and consulting with Licensee. Licensor may add elements to the System or modify, alter or delete elements of the System in its sole discretion from time to time. Under separate UFOCs and an applicable license agreement, and under our normal qualifications and procedures, Licensor offers licenses for other hotel brands under the names "Staybridge Suites®," InterContinental® Hotels and Resorts and Candlewood Suites®.

## 2.    GRANT OF LICENSE:

Licensor hereby grants to Licensee a non-exclusive license to use the System only at the Hotel, but only in accordance with this License and only during the "License Term" beginning with the Term Commencement Date and terminating as provided under paragraph 12 hereof. The License applies to the location specified herein and to no other location. Licensee acknowledges that Licensor, its divisions, subsidiaries, affiliates and parents are and may in the future be engaged in other business activities including activities involving transient lodging and related activities, and that Licensee is acquiring no rights hereunder other than the right to use the System as specifically defined herein in accordance with the terms of this License.

This License does not limit Licensor's right or the rights of any parent, subsidiary or affiliate of Licensor, to use or license the System or any part thereof or to engage in or license any business activity at any other location, including, without limitation, the licensing, franchising, ownership, operation and/or management of lodging facilities and related activities under the names and marks associated with the System and/or any other names and marks. Licensee acknowledges that Licensor's rights to use and/or license the System, referenced

2

immediately above, pre-date this License and are not limited or changed by the terms of this License. Licensee agrees that by acknowledging those rights, the parties do not intend to make Licensor's exercise of such rights subject to rules applicable to contractual performance or the exercise of contractual discretion under this License.

3. **LICENSEE'S RESPONSIBILITIES:**

A. **Operational and Other Requirements:**

During the License Term, Licensee will:

(1)  maintain a high moral and ethical standard and atmosphere at the Hotel;

(2)  maintain the Hotel in a clean, safe and orderly manner and in first class condition;

(3)  provide efficient, courteous and high-quality service to the public;

(4)  operate the Hotel 24 hours a day every day except as otherwise permitted by Licensor based on special circumstances;

(5)  strictly comply in all respects with the Manual (as it may from time to time be modified or revised by Licensor) and with all other policies, procedures and requirements of Licensor which may be from time to time communicated to Licensee (which communication may be, at Licensor's option, in hard paper copy or digital, electronic or computerized form and Licensee must pay any costs to retrieve, review, use or access such digital, electronic or computerized communication);

(6)  strictly comply with all of Licensor's standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the Hotel from unreliable sources of supply;

(7)  strictly comply with Licensor's requirements as to:

(a)  the types of services and products that may be used, promoted or offered at the Hotel;

(b)  the types and quality of services and products that, to supplement services listed on Attachment A, must be used, promoted or offered at the Hotel;

(c)  the use, display, style and type of signage and of all other forms of identification at or pertaining to the Hotel, including but not limited to any use of the Holiday Inn or Crowne Plaza name or any other of Licensor's service marks, trademarks or copyrights (in all formats, including but not limited to print, electronic or other media), which are seen by members of the consuming public or used to identify the Hotel to actual or prospective consumers;

(d)  directory and reservation service listings of the Hotel;

(e)  training of persons to be involved in the operation of the Hotel;

(f)  participation in all marketing, reservation service, advertising, training and operating programs designated by Licensor as System-wide (or area-wide) programs in the best interests of hotels using

L205

promote, protect and enhance the public image and reputation of all Holiday Inn and Crowne Plaza hotel brand names or any other Holiday Inn or Crowne Plaza name, and to increase the demand for services offered by the System. The Manual will apply to all hotels operated under the System by Licensor and its licensees. Limited exceptions from compliance may be made based on local conditions or special circumstances.

### D.   Limitation on Appeal Rights:

Licensee will not be arbitrary, capricious or unreasonable in exercising its appeal (or any other) rights under this License, and will use them only for the purpose for which intended.

### 6.   IAHI:

### A.   Membership:

Licensee, other licensees of the System, and Licensor are eligible for membership in the IAHI and are entitled to vote at its meetings on the basis of one hotel, one vote, provided that Licensee or Licensor, as the case may be, has paid all its dues and fees owing to the IAHI. The purposes of the IAHI will be to consider and discuss, and make recommendations on common problems relating to the operation of System hotels. Licensor will seek the advice and counsel of the IAHI Board of Directors and its Rules of Operation, Advertising and Reservation Committees, or their successor committees.

### B.   Function of Committees:

IAHI committees, their functions and their members will be subject to approval in writing by Licensor, which approval will not be unreasonably withheld. Recognizing that the IAHI must function in a manner consistent with the best interests of all persons using the System, the Licensee and Licensor will use their best efforts to cause the governing rules of the IAHI to be consistent with this License.

### 7.   PROPRIETARY RIGHTS:

### A.   Ownership of System:

The Licensee acknowledges and will not contest, either directly or indirectly, Licensor's unrestricted and exclusive ownership of the System and any element(s) or component(s) thereof, or that Licensor has the sole right to grant licenses to use all or any element(s) or component(s) of the System. Licensee specifically agrees and acknowledges that Licensor is the owner of all right, title and interest in and to the marks Holiday Inn, Holiday Inn Hotel & Suites, Crowne Plaza, Holiday Inn Express, Holiday Inn Express Hotel & Suites, Holiday Inn SunSpree Resort, Holiday Inn Resort, Holiday Inn Family Suites Resort, Crowne Plaza Suites, Crowne Plaza Resort, Holiday Inn Select, Staybridge Suites, Candlewood Suites, Hotel Indigo and InterContinental Hotels and Resorts and all other marks, names or other elements associated with the System, as defined in Section 1(B) of this License, or derived

10

therefrom (including but not limited to domain names or other identifications or elements used in electronic commerce), together with the goodwill symbolized thereby, and that Licensee will not contest directly or indirectly the validity or ownership of the marks either during the term of this License or after its termination. All improvements and additions whenever made to or associated with the System by the parties hereto or anyone else, and all service marks, trademarks, copyrights, and service mark, trademark, domain name or similar registrations at any time used, applied for or granted in connection with the System, and all goodwill arising from Licensee's use of Licensor's marks shall inure to the benefit of and become the property of Licensor. Upon expiration or termination of this License, no monetary amount shall be assigned as attributable to any goodwill associated with Licensee's use of the System or any element(s) or component(s) of the System including any trademarks or service marks licensed hereunder.

### B.    **Trademark Disputes:**

Licensor will have the sole right and responsibility to handle disputes with third parties concerning use of all or any part of the System, and Licensee will, at its reasonable expense, extend its full cooperation to Licensor in all such matters. All recoveries made as a result of disputes with third parties regarding use of the System or any part thereof shall be for the account of Licensor. Licensor need not initiate suit against alleged imitators or infringers, and may settle any dispute by grant of a license or otherwise. Licensee will not initiate any suit or proceeding against alleged imitators or infringers or any other suit or proceeding to enforce or protect the System.

### C.    **Protection of Name and Marks:**

Both parties will make every effort consistent with the foregoing to protect and maintain the names and marks "Holiday Inn", "Holiday Inn Express", and "Crowne Plaza" and their distinguishing characteristics (and the other service marks, trademarks, slogans, etc., associated with the System). Licensee agrees to execute any documents deemed necessary by Licensor or its counsel to obtain protection for Licensor's marks or to maintain their continued validity and enforceability. Licensee agrees to use the names and marks associated with the System only in the manner authorized by Licensor and acknowledges that any unauthorized use thereof shall constitute infringement of Licensor's rights.

### D.    **Modification or Discontinuation of Marks:**

If Licensor modifies or discontinues use of any of the marks licensed under this License as a result of any proceeding or settlement, then Licensee agrees to comply with Licensor's instructions in order to implement such modification or discontinuation. Licensee further agrees that it will have no right to any compensation or other remedies from Licensor or any of its subsidiaries, affiliates or parents as a consequence of any such modification or discontinuation.

**IN WITNESS WHEREOF**, the parties have executed this License, as of the date first stated above.

**Licensee:**

**GRACE HOTELS LLC**

By: _____
     Mukesh Bheda
     Partner

Witness: _____

By: _____
     Hemant Sheth
     Partner

Witness: _____

By: _____
     Vithal L. Chaudhari
     Partner

Witness: _____

**Licensor:**

**HOLIDAY HOSPITALITY FRANCHISING, INC.**

By: _____
     Jenny Tidwell
     Vice President
     Franchise Administration

Attest: _____
     Assistant Secretary

33

L205

# Exhibit

# G-002

DEFENDANT'S EXHIBIT
G-002a





Holiday Inn EXPRESS


INTERCONTINENTAL
HOTELS GROUP

© 2003 InterContinental Hotels Group. ALL RIGHTS RESERVED. CONFIDENTIAL AND PROPRIETARY - DO NOT TRANSFER THESE MATERIALS WITHOUT PRIOR EXPRESS WRITTEN PERMISSION OF InterContinental Hotels Group

| COVER SHEET AND DRAWING INDEX | A0.0 |
| PROJECT DATA | A0.1 |
| CONCEPTUAL ARCHITECTURAL SITE PLAN | A1.0 |
| FIRST FLOOR PLAN | A1.1 |
| FIRST FLOOR REFLECTED CEILING PLAN | A1.1R |
| SECOND FLOOR PLAN | A1.2 |
| SECOND FLOOR REFLECTED CEILING PLAN | A1.2R |
| THIRD FLOOR PLAN | A1.3 |
| TYPICAL FLOOR REFLECTED CEILING PLAN | A1.3R |
| ATTIC PLAN | A1.4 |
| ROOF PLAN | A1.5 |
| FRONT EXTERIOR ELEVATION | A2.1 |
| SIDE EXTERIOR ELEVATIONS | A2.2 |

BUILDING SECTIONS

| WALL SECTIONS | A2.3 |
| PORTE COCHERE DETAILS | A3.1 |
| PORTE COCHERE DETAILS | A3.2 |
| ENLARGED LOBBY PLAN | A3.3 |
| ENLARGED REFLECTED CEILING PLAN | A4.1 |
| ALTERNATE INDOOR POOL | A4.1R |
| KING / DD GUEST ROOM PLANS | A4.2 |
| KING / DD GUEST SUITE ROOM PLANS | A4.3 |
| ACCESSIBLE KING / DD ROOM PLANS | A4.4 |
| ACCESSIBLE KING / DD SUITE ROOM PLANS | A4.5 |
| INTERIOR ELEVATIONS | A4.6 |
| INTERIOR ELEVATIONS | A5.1 |
| INTERIOR ELEVATIONS | A5.2 |

GUEST ROOM INTERIOR ELEVATIONS

| GUEST ROOM INTERIOR ELEVATIONS | A5.3 |
| GUEST ROOM BATH ELEVATIONS | A5.4 |
| DOOR SCHEDULE | A6.1 |
| WINDOW AND GRILLE ELEVATIONS | A6.2 |
| WALL TYPES | A6.3 |
| FRONT DESK DETAILS | A7.1 |
| FRONT DESK DETAILS | A7.2 |
| ARCHITECTURAL NARRATIVE | A1.3 |
| STRUCTURAL SYSTEM NARRATIVE | S1.2 |
| HVAC SYSTEM NARRATIVE | M1.2 |
| PLUMBING SYSTEM NARRATIVE | P1.3 |
| ELECTRICAL SYSTEM NARRATIVE | E1.6 |
| FIRE PROTECTION SYSTEM NARRATIVE | F1.7 |

DRAWING INDEX

EXPRESS PROTOTYPE
STRAIGHT PAVILION

A0.0



| | | |
|---|---|---|
| ENLARGED LOBBY PLAN | | |
| ENLARGED REFLECTED CEILING PLAN | A1.1R | |
| ALTERNATE INDOOR POOL | A1.2 | |
| KING / DQ GUEST ROOM PLANS | A1.2R | |
| KING / DQ GUEST SUITE ROOM PLANS | A1.3 | |
| ACCESSIBLE KING / DQ ROOM PLANS | A1.3R | |
| ACCESSIBLE KING / DQ SUITE ROOM PLANS | A1.4 | |
| INTERIOR ELEVATIONS | A1.5 | |
| INTERIOR ELEVATIONS | A2.1 | |
| INTERIOR ELEVATIONS | A2.2 | |

LECTED CEILING PLAN

SECOND FLOOR PLAN

LECTED CEILING PLAN

THIRD FLOOR PLAN

LCTED CEILING PLAN

ATTIC PLAN

ROOF PLAN

EXTERIOR ELEVATION

EXTERIOR ELEVATIONS

© 2003 InterContinental Hotels Group. ALL RIGHTS RESERVED
CONFIDENTIAL AND PROPRIETARY - DO NOT MODIFY,
DUPLICATE, REPRODUCE, DISCLOSE OR TRANSFER THESE
MATERIALS WITHOUT THE EXPRESS WRITTEN PERMISSION
OF InterContinental Hotels Group

InterContinental Hotels Group DISCLAIMER. THIS IS A PROTOTYPE DESIGN ONLY.
IT MAY NOT BE SUITABLE FOR A PARTICULAR SITE OR CERTAIN LOCAL CONDITIONS.
InterContinental Hotels Group IS NOT RESPONSIBLE FOR ADAPTATION OF THE DESIGN
TO A PARTICULAR SITE, OR FOR THE COMPLIANCE OF THE DESIGN WITH
APPLICABLE LAWS, REGULATIONS, ORDINANCES AND CODES.



DEFENDANT'S
EXHIBIT
G-002b

# Exhibit

# G-003



# NOVA DESIGN BUILD, INC.

### ARCHITECTS   INTERIOR   DESIGNERS   ENGINEERS
#### 3100 DUNDEE ROAD SUITE-508 NORTHBROOK IL 60062
#### PHONE: 847 564 1056   FAX: 847 564 1473

## PROPOSAL FOR LIMITED ARCHITECTURAL SERVICES/CONSTRUCTION.
## Construction by: ANNEX BUILDERS LLC Northbrook, IL.

### PART I    DESIGN AND DRAWINGS – SERVICES WITH A LUMP SUM FEE.
(Nova Design Build, Inc. offers Full Architectural Services as per AIA Document B141 for a fee of 7% of the cost of construction.)

(1)  *Proposal Information:*   3-18-06 (Valid for 30 days)

Proposal Prepared For:   Mr. Mukesh Bheda, Cell (630) 779 5682

3223 Border Road, Geneva, IL 60134

Project Name:   Proposed Holiday Inn (95 +or- Units)

Approx. 2.1 acre parcel at lot no. 3 South-West of Lakehurst Road at Waukegan Road, with access from Lakehurst Road, Waukegan, Illinois.

(2)  *Scope of Work Includes:*   Full Construction / BID    HM. 3-18-06   3-18-06

(2A)  Architectural:   Architectural scope drawings for proposed four story hotel building with indoor swimming pool, administrative areas, meeting rooms, breakfast area, laundry room No lower level. Metal stud and composite deck structure.

(2B)  Civil:   By others

(2C)  Structural:   Scope Drawings as required in coordination with Item No. 2A above.
(at 4'-0" frost depth and spread footing on soil with bearing capacity. min. 3,000 psf )

(2D)  Electrical:   Scope Drawings as required in coordination with Item No. 2A above.

(2E)  HVAC:   Scope Drawings as required in coordination with Item No. 2A above.

(2F)  Plumbing:   Scope Drawings as required in coordination with Item No. 2A above.

(2G)  Fire Protection:   By others. (By a design-build fire protection contractor).

(2H)  Zoning:   NA

(2I)  Franchise:   Holiday Inn Franchise approval Process.

(3)  *Scope of Work Does Not Include:*

(3A)  Annexation or Department of Transportation permit procedures

(3B)  Plat of survey, topographical survey, or soil boring test report

(3C)  Analysis of asbestos or any other contamination in existing property and specifications of removal of the same from the property during demolition

(3D)  Landscape design. Indoor pool Systems design.

(3E)  As-built drawings of existing construction and utilities.

(3F)  Presentation drawings and models

(3G)  Any revisions not initiated by Nova Design Build, Inc. after approval to start design development drawings.

(4)  *Nova Design Build's Fee for Scope of Work described in item number (2) above:  $ 50,000/-*
Fifty Thousand Dollars

(5)  *Mode of Payment and time schedule to complete for Part I:*

(5A)  Retainer to Start Work:   25% of Total Fee

(5B)  Preliminary Design Completion (in 10days from start):   25% of Total Fee + Reimb. Exp. + A. W. F.

(5C)  70% Design Development Phase:   25% of Total Fee + Reimb. Exp. + A. W. F.

(5D)  Permit Drawings Completion(in 90 days from start):   25% of Total Fee + Reimb. Exp. + A. W. F.

(5E)  Reimbursable Expenses: Reproductions, CAD Plots, Photos, Shipping, Telephone and Transportation Costs, etc. (Final CAD Plots @ $10.00/plot, Blue Line Prints @ $1.00/print. Plots may be produced in-house.) Nova Design Build, Inc. will not release any reproducible copies or CAD files.

(6)  This Proposal may be withdrawn by Nova Design Build, Inc. if not accepted in 7 days.

(7)  In the event that this project is delayed or placed on hold due to no fault of Nova Design Build Inc., the Owner agrees to pay Nova Design Build, Inc. for all progress made on the project. The Owner shall be responsible for informing Nova Design Build, Inc. to stop working in such event and request invoice immediately.

(8)  Nova Design Build, Inc. will assume that the reproductions submitted to the Owner or Owner's representatives are accepted by the Owner and that no further modifications or corrections are required unless the Owner requests Nova Design Build, Inc. to do so in writing within seven days after receiving the reproductions.

DEFENDANT'S EXHIBIT

G--003



# NOVA DESIGN BUILD, INC.

### ARCHITECTS  INTERIOR DESIGNERS  ENGINEERS

**3100 DUNDEE ROAD SUITE-508 NORTHBROOK IL 60062**

**PHONE: 847 564 1056    FAX: 847 564 1473**

(9)  The Owner agrees not to use any drawings received from Nova Design Build, Inc. for bidding, permit or construction purposes unless and until Nova Design Build, Inc. is paid in full for all the invoices due for Part I.

(10)  Professional errors and omissions liability shall be limited to the actual compensation for such services.

(11)  The Owner agrees to pay Nova Design Build, Inc.:

(11A)  18% annual interest rate on all delayed payments to Nova Design Build, Inc.

(11B)  All legal expenses including, but not limited to, attorney's fees and collection agency's fees involved in obtaining payment of this contract.

(12)  Design and drawings remain Nova Design Build, Inc.'s property and not to be duplicated anywhere in any fashion without Nova Design Build, Inc.'s written approval.

(13)  The Owner agrees that Nova Design Build Inc. can publicize and or display pictures and or drawings of the project for article and or marketing purposes.

(14)  *Additional work Fee (A.W.F.):* Additional services not mentioned in (2) Scope of Work Includes of Part-I will be performed as on "as needed" basis at $ 70/Hr.

## PART II    Construction Phase

The Owner has read and understood that this is a design-build contract proposal. A construction contract using appropriate AIA Documents will be signed by the owner upon mutually agreeable construction cost, schedule and terms as a next phase (PART II) of the contract with ANNEX BUILDESRS LLC, Northbrook, IL. If parties can not mutually agree on a construction contract terms in 30 days after permit drawings are completed, then the owner shall have no duty or obligation to hire Annex Builder LLC for construction phase and Nova Design Build, Inc. shall have no further obligations or duties as architect/engineers for construction phase beyond scope drawings. ✱

Proposal Prepared By: _Himanshu J. Modi_    Date: 3-18-06

The Owner agrees that the terms and conditions of the proposal are satisfactory and hereby accepted:

Proposal Accepted By: _Vrelu_    Date: 03-18-2006

Name / Company of the Owner: _GRACE HOTELS LLC._

Attachments:

✱ In the event the owner decides not to hire Annex Builder LLC for construction The owner agrees to pay to Nova Design Build Inc. additional $15,000 within 30 days from award of construction contract. Any modifications required in the drawings for condition purposes will be executed by Nova Design Build, Inc. without additional Fee. in timely manner

hm. 3-18-06
vru 03-18-06

Proposal    Page 2 of 2

# Exhibit

# G-004

BankofAmerica SF002A 1/4/2007 9:24:36 AM    PAGE    3/004    ID= 8882945658

TO:JAYNE UZL   COMPANY:

**Bankof America**

Bank of America

Capture Date: 20060321 Sequence #: 8720897670

---

**GRACE HOTELS LLC**   12-08                                      **1006**
3223 BORDER RD.
GENEVA, IL 60134-4714                                    70-361/711 IL
                                                              151

                                        Date  3/18/06

Pay to the
Order of  Nova Design Build, LLC      $ 12,500 00/100

Twelve thousand five hundred 00/100              Dollars

**Bankof America**              TWO SIGNATURES REQUIRED IF OVER $10,000.

ACH R/T 071103618

For  Deposit / Retainer for
     Architectural Contract

⑆071103619⑆ 0028727420570 1006      ⑈000125000⑈

No Electronic Endorsements Found
No Payee Endorsements Found

310230965  03-20-06

CITIBANK

071600003

03/21/06

0880487200897670

DEFENDANT'S
EXHIBIT

G-004

BankofAmerica SFO02A 1/4/2007 9:01:00 AM    PAGE    3/004    ID= 8882945658

TO: JAYNE UZL   COMPANY:

**Bank of America**

Bank of America

Capture Date: 20060412 Sequence #: 3720491990

---

**GRACE HOTELS LLC**    12-05                    **1009**
3223 BORDER RD.
GENEVA, IL 60134-4714          Date *April 8, 2006*   70-361/711 IL
                                                   151

Pay to the
Order of *Nova Design Build LLC*     $ 12,500 $\frac{00}{100}$

*Twelve thousand five hundred & $\frac{00}{100}$* Dollars

**Bank of America**          TWO SIGNATURES REQUIRED IF OVER $10,000.

ACH R/T 071103819

For *2nd Installment - total 25k*

⑆071103819⑆ 002872742057⑈ 1009    /0001250000/

---

41869 04112006   2275 I3 Harris N.A ATM>071000288<
04112006557133*0022542445    4714SK400214

BANK OF AMERICA, NA STL
AR1800822 F4390 63 P01
04/12/06

3720491990

HARRIS N.A. ▶0710002884
311 W MONROE 04/11/06
CHICAGO, IL 60606

0100501027

PAY TO THE ORDER OF
CITIBANK, F.S.B.
FOR DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT #080778072

No Electronic Endorsements Found
No Payee Endorsements Found

BankofAmerica SFO02A 1/4/2007 9:27:47 AM   PAGE   3/005   ID= 8882945658

TO: JAYNE UZL   COMPANY:

**Bank of America**

Bank of America

Capture Date: 20060511 Sequence #: 8420500389

---

**GRACE HOTELS LLC**   12-05                                    **1012**
3223 BORDER RD.
GENEVA, IL  60134-4714                     Date  5/7/06          70-361/711 &
                                                                    151

Pay to the
Order of   Novadesign Build LLC       | $ 12500/—

Twelve Thousand five hundred 8 00/xx   Dollars

**Bank of America**

ACH R.T 071103619               TWO SIGNATURES REQUIRED IF OVER $10,000.

For  3rd Payment 70% complet

⑆071103619⑆ 00287274205 7⑈ 1012   ⑈00012500000⑆

---

CBC 011 00000000980776972  >271070801<
051006 57793 2003788 P12    Citibank F.S.B
039   5000 W.Madison 4th FU (201) 242 2627

**PAY TO THE ORDER OF
CITIBANK, F.S.B.
FOR DEPOSIT ONLY
NOVADESIGN BUILD INC
ACCT #000776072**

05/11/06      05/11/06

No Electronic Endorsements Found
No Payee Endorsements Found

BankofAmerica SFO02A 1/4/2007 9:17:30 AM PAGE 2/003 ID= 8882945658

TO:JAYNE UZL COMPANY:

**Bank of America** 〰

Bank of America

Capture Date: 20060712 Sequence #: 8220758172

---

**GRACE HOTELS LLC** 12-05 **1022**
3223 BORDER RD.
GENEVA, IL 60134-4714 70-361/711 IL
151

Date 7/9/06

Pay to the
Order of _Nova Design Build Inc_ $ 12500/—

_Twelve thousand five hundred_ 00/100 Dollars

**Bank of America** 〰 TWO SIGNATURES REQUIRED IF OVER $10,000.

ACH R/T 071103619

_Beer_

For _____ _Hhhhh_

⑆071103619⑆ 0028727420057⑈ 1022 ⑆0001250000⑆

310186752 07-10-06 ≥27107060<
CITIBANK IL

BANK OF AMERICA NA CHI
0810900832 E5633 02 PSS 071066565
07/12/06
8220758172 0482326265

PAY TO THE ORDER OF
CITIBANK, F.S.B.
FOR DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT 1960776072

No Electronic Endorsements Found
No Payee Endorsements Found

BankofAmerica SFO02A 1/4/2007 9:17:30 AM    PAGE    3/003    ID= 8882945658

TO:JAYNE UZL  COMPANY:

**Bank of America**

Bank of America

Capture Date: 20060717 Sequence #: 8820389346

---

**GRACE HOTELS LLC**    12-05                          ·3C8            1023
3223 BORDER RD.
GENEVA, IL 60134-4714                   Date 7/9/06      70-361/711 IL
                                                               151

Pay to the
Order of  Nova Design Build Que    |  $2000/—

Two Thousand  8⁰⁰/100 ———————→ Dollars

**Bank of America**              TWO SIGNATURES REQUIRED IF OVER $10,000.

ACH R.T 071103619                   Blee8

For Copying sets + Electric

⑆071103619⑆  00287274205 7⑈ 10 23    ⑈0000200000⑈

---

SAA200133594000000000000000000007132006      990

PAY TO THE ORDER OF
CITIBANK, F.S.B.
FOR DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT #0080770972

BANK OF AMERICA,NA7.34X5505
▸0810000324 EE032 22 PDS
07/12/06

8820388Q4690007

No Electronic Endorsements Found
No Payee Endorsements Found

Bank of America | Account Activity | Transaction Image Screen

Page 1 of 2

## Online Banking

**Bank of America** *Higher Standards*

Search · Locations · Alerts · Mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Business Tools | Investments | Customer Service |

## Check Image – Front and Back

Posting Date: 11/21/2006      Check #: 1038        Amount: $3,000.00

Reference: 83920225920       Account: DDA-2057      Nickname:

GRACE HOTELS LLC   12-05                              1038
2222 BORDER RD.
GENEVA, IL 60134-4714

                                     Date 11/12/06

Pay to the
Order of     Nova Design Build        |$3000/—

Three thousand & 00/100 ———— Dollars

**Bank of America**               TWO SIGNATURES REQUIRED IF OVER $10,000.

for _____

⑈071103619⑈ 00287274 2057⑈ 1038   ⑈0000300000⑈

46767 11202006  2296 T5 Harris N A ATM>0710002BB<
11202006  05903318949     6919SK699219

PAY TO THE ORDER OF
CITIBANK, F.S.B.
FOR DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT #0000778872

BANK OF AMERICA NA STR              HARRIS N.A. ⑈0710002224
961099032  E3159 02 P01            311 W MONROE 11/20/06
11/21/06                           CHICAGO, IL 60606
3920225920                         0300283863

To print this page for reference purposes please use the print button on your browser or click "File"
and "Print". More information about images and image availability.

| Return to Order Check Copy |

Lower your risk of identity theft
Because you can control the information you choose
to release, you are the single best person to protect
your information. Online Banking offers free features
that can reduce your risk of identity theft.

Bank of America | Account Activity | Transaction Image Screen                    Page 1 of 2

**Bank of America** 〰 **Higher Standards**                                   **Online Banking**

Search · Locations · Alerts · Mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Business Tools | Investments | Customer Service |

## Check Image – Front and Back

| Posting Date: 11/17/2006 | Check #: 1039 | Amount: $7,500.00 |
| Reference: 83920499549 | Account: DDA-2057 | Nickname: |

GRACE HOTELS LLC  12-05                                              1039
2223 BORDER RD.
GENEVA, IL 60134-4714                        Date 11/12/06      20-361/711 ε
                                                                      714

Pay to the   Nova Design Build           | $7500/—
Order of

Seventy five hundred 8⁰⁰/100—  Dollars

**Bank of America** 〰        TWO SIGNATURES REQUIRED IF OVER $10,000.

ACH R/T 071103619

For _____        Bee___

⑈071103619⑈ 00287272 2057⑈ 1039   /00007500000/

46683 11162006  1161 T5 Harris N.A ATM>071000288<
11162006  0000000000000096+0SK600213

PAY TO THE ORDER OF
CITIBANK, F.S.B
FOR DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT #0800779672

BANK OF AMERICA/NA STL        HARRIS N.A. #071000288N
06100000000  E2774 02 PS1     311 W MONROE 11/16/06
       11/17/06               CHICAGO, IL 60696
3920499549                    0300162673

To print this page for reference purposes please use the print button on your browser or click "File"
and "Print". More information about images and image availability.

| Return to Order Check Copy |

Lower your risk of identity theft
Because you can control the information you choose
to release, you are the single best person to protect
your information. Online Banking offers free features
that can reduce your risk of identity theft.



Bank of America | Account Activity | Transaction Image Screen                    Page 1 of 2

**Bank of America** 🇺🇸

Online Banking

Search · Locations · Alerts · New mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Business Tools | Investments | Customer Service |

Accounts Overview    Account Details    Account Summary    Find Transaction    Alerts

## Check Image – Front and Back

| | | |
|---|---|---|
| Posting Date: 04/09/2007 | Check #: 1050 | Amount: $2,500.00 |
| Reference: 83720954012 | Account: DDA-2057 | Nickname: |

GRACE HOTELS LLC    18-05                                    1050
2022 BORDER RD.
GENEVA, IL 60134-6714                    Date: 03-27-07    76-984/711 IL

Pay to the
Order of    Nova Design                    $ 2500-00

Twenty Five Hundred & 00/100 Dollars

Bank of America
ACH R/T 071 923810                    TWO SIGNATURES REQUIRED IF OVER $10,000

                                        Bee

For _____

⑆071103619⑆ 00 287 27 4 2057⑈ 1050  /0000 250000/

Y7841 V006200/  5912 15 Harris N-H ATM>0/1000200<
01062007  0000000000000000003613SK600219

BANK OF AMERICA.JM STL
081000032  EZ513 02 P01
04/09/07

3720954012

HARRIS N.A. W0710002004
311 W MONROE 04/06/07
CHICAGO, IL 60606

0200135769

PAY TO THE ORDER OF
HTBANK, F.S.B.
11 DEPOSIT ONLY
NOVA DESIGN BUILD INC
ACCT #080077072

To print this page for reference purposes please use the print button on your browser or click "File"
and "Print". More information about images and image availability.

| Return to Account Activity |

Lower your risk of identity theft
**Because you can control the information you choose
to release, you are the single best person to protect
your information.** Online Banking offers free features
that can reduce your risk of identity theft.

Bank of America | Account Activity | Transaction Image Screen          Page 1 of 2

**Bank of America**                                    Online Banking

Search · Locations · Alerts · New mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Business Tools | Investments | Customer Service |

Accounts Overview    Account Details    Account Summary    Find Transaction    Alerts

## Check Image – Front and Back

| | | |
|---|---|---|
| Posting Date: 04/17/2007 | Check #: 1054 | Amount: $6,500.00 |
| Reference: 83720500536 | Account: DDA-2057 | Nickname: |



To print this page for reference purposes please use the print button on your browser or click "File" and "Print". More information about images and image availability.

Return to Account Activity

Lower your risk of identity theft
Because you can control the information you choose
to release, you are the single best person to protect
your information. Online Banking offers free features
that can reduce your risk of identity theft.

# Exhibit

# G-005

**Grace Hotels, LLC**
**3223 Border Road**
**Geneva, Illinois 60134**

November 13, 2006

Mr. Himanshu J. Modi
Nova Design Building, Inc.
3100 Dundee Road, Suite 508
Northbrook, IL 60062

Dear Mr. Modi:

This letter confirms the agreement that we entered into on November 8, 2006, at the law offices of Simon, Lapidos & Uhler in respect to the contract between us for your architectural services for the proposed Holiday Inn Express located on the approximate 2.1 acre parcel in Waukegan, Illinois.

We have agreed that in connection with the process for obtaining permits from the City of Waukegan and all other governmental agencies having jurisdiction over the project, and approval from Holiday Inn, you will make whatever changes are required without additional charge if such changes result from the following:

A.      Compliance with building and all other governmental code, ordinances or rule requirements.

B.      Changes required by Holiday Inn pursuant to the Design & Plan Review Comments dated August 3, 2006 (the "Comments"). It is my understanding that none of these changes would give rise to extra charges per our discussion at our meeting.

C.      Any modifications required in the drawings for coordination purposes for the construction (as per the hand written part of the contract).

We shall pay for any other changes required by Holiday Inn not set forth in the Comments provided such changes result from features we requested which are not acceptable to Holiday Inn because they do not meet their standards and are usually the type of features not approved by Holiday Inn, and such features have not been made for construction necessity. Subject to our written authorization for you to make the changes, your charge for these changes will be at the rate of $70.00 per hour.

A change shall be made no later than 14 days after receipt of written notice that the change is

DEFENDANT'S
EXHIBIT

G-005

Himanshu J. Modi
November 13, 2006
Page 2

required.

Simultaneously with the execution of this letter, we hereby deliver to you the following:

A.    A check in the sum of $3,000.00 representing the settlement amount on your invoice dated October 13, 2006 for various expenses.

B.    A check in the sum of $7,500.00 representing 50% of the $15,000.00 due pursuant to the handwritten language on the second page of the contract for your architectural services, which change was initialed by you and us on March 18, 2006.  We hereby agree to pay the balance of the $15,000.00 upon receipt of the approval of the plans from the City of Waukegan and any other governmental agency having jurisdiction over the project and Holiday Inn Express.  In the event we are in receipt of all such approvals except for the approval from the Illinois Department of Public Health in respect to the swimming pool for the project, then we shall pay to you $5,000.00 of the $7,500.00 balance, and the remaining $2,500.00 balance shall be paid to you upon receipt of the approval for the swimming pool from the Illinois Department of Public Health.

For and in consideration of this agreement you agree to waive your invoice dated October 13, 2006, for extra work, which invoice is in the sum of $10,202.50.

If the above terms meet with your approval please sign your agreement at the bottom of this letter and return it to us.

Very truly yours,

**GRACE HOTELS, LLC.**

By: _____
                    Member

Agreed and Accepted:

_____
Himanshu J. Modi

5\letters\Modi.110906v1

# Exhibit

# G-006

(4)

Grace Hotels, LLC.

- Nova Capital Design Build llc
- Annex Builders,
- ICG.

NOT INTERESTED IN CONSTRUCTION

of H.t. Top. lakewood 22nd
        wabap llc
        Huneman J. Nova

11-13-06

DEFENDANT'S
EXHIBIT

G-006

# Exhibit

# G-008



# Exhibit

# G-009



DEFENDANT'S
EXHIBIT

G-009

# Exhibit

# G-010



16 Bay - Tentative Plans - 1st Floor

→ Laundry could be moved to other end (over Laundry 1)
→ create one handicap on south-west
→ move Breakfast 1 Bay south (even if it's small down all)

N

S

North

DEFENDANT'S
EXHIBIT

G-010

# Exhibit

# G-011

④



First Floor – 21 Rooms; 3 suites

415 Feet

128 Parking

225 Feet

Lakehurst Rd



Scale: 1" = 50 feet

5  25  50

Business Confidential Information – Grace LLC

First Floor Rooms: 21 [Total 40 – 19; 3 Lobby, 5 BF area & swim, 2 stairs and storage, 1 fitness, 3 mtg rms, 2 office, 1 busi center, 1 elevator, 1 laundry]
Second Floor Rooms: 33 [40 – 7; 1 elevator, 2 Stairs & Storage, 3 lobby]
Third Floor Rooms: 37 [40 – 3; 1 elevator 2, Stairs & Storage]

Total Rooms: 21+33+37 = 91; Suites: 18
Total Parking: 117 spaces, Lot dimensions: 225'x415' (inclusive of all easements)

DEFENDANT'S EXHIBIT

G-011

# Exhibit

# G-012



**DEFENDANT'S EXHIBIT**

G-012

# Exhibit

# G-013

16 Bays

| | Total Rm | Std Rm | Suites | Std Rm used | Sts used | net Suites | n-get std Rms |
|---|---|---|---|---|---|---|---|
| 1st Floor | 32 | 22 | 10 | 16 (15) | 7 | 3 | 6 (7) |
| 2nd Floor | 32 | 22 | 10 | 3 | 2 | 8 | 19 |
| 3rd Flr | 32 | 22 | 10 | 4 (3) | 0 | 10 | 18 (19) |
| 4th Flr | 32 | 22 | 10 | 4 (3) | 0 | 10 | 18 (19) |
| | 128 | 88 | (40) | 27 (24) | 9 | 31 | 61 (64) |

3) suites
61-64 suites       92-95 Rms

92-95

| | 1st Floor | Rms used | | 2nd Flr | Rms used | | 3rd/4th FLR | Rms used |
|---|---|---|---|---|---|---|---|---|
| Std Rms | 1 Fitness ✓ | | | 2 Stairs ✓ | | | 2 Stairs | |
| (15) | 3 Swim ✓ | | | 1 Elevator | | | 1 elevator | |
| | 3 Breakfast ✓ | | | | | | (1) Storage | |
| | 2 Laundry ✓ | | | | | | | |
| | 1 Elevator ✓ | | | | | | | |
| | 3 mtg Rm | | | | | | | |
| | 2 Stairs ✓ | | | | | | | |
| Suites | 2 mtg Rms | | | 2 Lobby | | | O suite | |
| (7) | 2 office/Bus-Ctr | | | | | | | |
| | 2 Lobby | | | | | | | |
| | 1 Board Rm/Lobby | | | | | | | |

DEFENDANT'S
EXHIBIT
G-013

# Exhibit

# G-014



EXISTING LOT 3
59026 Sq. Ft.
1.3550 Acres

RESUBDIVIDED LOT 3
93,375 Sq. Ft.
2.1435 ACRES

TOTAL PARKING — 113

Lakehurst Road

N

GRAPHIC SCALE

( IN FEET )
H. 1"= 40 ft. V. 1"=N.A. ft.

Lot 3
Area
93,375 Sq. Ft.
2.14 ACRES

PROPOSED 12' WIDE
EMERGENCY LANE

PROPOSED
HOTEL
14,432 S.F. G.F.A.

CANOPY

PROPOSED HEAVY
DUTY PAVEMENT

TRASH

PROPOSED
FUTURE CONNECTION

**EXHIBIT A**

FILE: PR1.dwg
DRAWN BY:  JRM    GHA PROJECT #
DATE:  6/6/2006        3732.000
CHECKED BY:  DED    SCALE  1"=40'

**GEWALT HAMILTON**
A S S O C I A T E S, I N C.
CONSULTING ENGINEERS & SURVEYORS
850 Forest Edge Drive   Vernon Hills, IL 60061   Tel. 847.478.9700   Fax 847.478.9701

**LAKEHURST MALL HOTEL
PROPOSED LOT DIMENSIONS**

SHEET NUMBER:
**1**
OF  1  SHEETS

# Exhibit

# G-015



**City of**
# Waukegan
Planning & Zoning Department
100 N. Martin Luther King Jr. Avenue
Waukegan, Illinois 60085-4395
☎ (847) 625-6878
Fax (847) 625-6880

**Richard H. Hyde, Mayor**
**Wayne Motley, City Clerk**
**Patrick M. Dutcher, Treasurer**

**Russ Tomlin**
**Director Planning & Zoning**

February 10, 2006

To Whom It May Concern:

We have reviewed the site plan for the proposed Holiday Inn Express on a portion of the Lakehurst Cinema site. It appears that the only aspect of the proposal that requires a public hearing and Council action is the resubdivision of the property. Otherwise, **the property is properly zoned and requires no conditional use permits, set back or landscape variances. Also, no storm water detention will be required to accommodate this development.** As part of our administrative review, we would like to work towards a common access to the site that would serve both the Holiday Inn Express as well as the property to the east.

We look forward to working with the current and prospective property owners to keep this process moving quickly. We're pleased with both the proposed façade as well as the increased green space on what is now a totally impervious site. We're also encouraged that you have taken the time to meet with the Departments of Planning & Zoning and Engineering as well as the Mayor's office and the Alderman Rivera. We are all impressed with your commitments to making this an attractive and quality development along our rapidly growing Waukegan Road Corridor.

If you have any questions or concerns regarding this project, please contact my office at your convenience. We're confident that you will find our departments both professional and exceedingly responsive and efficient. Again, welcome to Waukegan and we look forward to working together!

Sincerely,

Russ Tomlin
Director of Planning and Zoning

DEFENDANT'S EXHIBIT
G-015

# Exhibit

# G-016

# NOVA DESIGN BUILD, INC.

**ARCHITECTS  INTERIOR  DESIGNERS  ENGINEERS**
**3100 DUNDEE ROAD SUITE-508  NORTHBROOK IL 60062**
**PHONE: 847 564 1056    FAX: 847 564 1473**

Via Fax (973) 422 6019 (Pages: 1) and certified mail.

9-28-07

Mr. Ron Gibney
CIT Lending Services Corporation
1 CIT Drive
Livingston NJ 07039

Re:  Finance approval and inspections for application for payments for construction for proposed
     Holiday Inn Express, 611 Lakehurst Road, Waukegan IL.

Dear Mr. Gibney

Please be advised that NOVA DESIGN BUILD, INC. has withdrawn from the project. We no longer
take responsibility of the construction in progress. All the approvals based on NOVA DESIGN
BUILD, INC.'s certifications to your office for the design and drawings for the above noted project
shall be considered void and null.

Use of any Architectural, Structural, Mechanical, Plumbing and Electrical Drawings (for any
approval, inspections, construction payment approval purposes) hereby is prohibited until further
written notice from my attorney.

**We intend to litigate the project and take legal actions against all the
parties involved for copy right violation and unauthorized use of design
and drawings prepared by NOVA DESIGN BUILD, INC.**

For additional details see letter (previously faxed to you) dated 9-24-07 to the Building
Commissioner of City of Waukegan, IL.

Sincerely,

*Himanshu J. Modi*

Himanshu J. Modi
For Nova Design Build, Inc.

CC: Mr. George Spathis,
    File

DEFENDANT'S
EXHIBIT

G-016



# NOVA DESIGN BUILD, INC.

**ARCHITECTS   INTERIOR   DESIGNERS   ENGINEERS**
**3100 DUNDEE ROAD SUITE-508   NORTHBROOK IL 60062**
**PHONE: 847 564 1056    FAX: 847 564 1473**

Via Fax (847) 406 3141 (Pages: 2) and certified mail.

9-24-07

Mr. John J. Jurkovac Sr.
Building Commissioner
City of Waukegan
100 N. Martin Luther King Jr. Ave.
Waukegan, Illinois 60085



Re: Permit and Inspections for proposed Holiday Inn Express, 611 Lakehurst Road, Waukegan IL.

Dear Mr. Jurkovac

I was able to look at the permit drawings of the above noted project on 9-20-07 at 10:30 AM only as a result of my signing of freedom of information request form for the same. The permit set had only architectural and structural drawings with followings as professionals of record. I expressed to 'Michelle' (the city official who brought the set to me) that I wanted to look at the complete permit set including mechanical, electrical and plumbing engineering drawings. 'Michelle' indicated to me that she did not have the set with (MEP) engineering drawings available at the moment but I will be contacted as soon as they are available.

1. **Architectural drawings:**
   Adams N. Lyons (Lic. # 001-017492)
   drawings signed date: July 19, 2007
   Lyons Design Group, Inc.
   211 East Church St., Libertyville, Illinois.

   **The drawings are in violation copy right of Nova Design Build, Inc's. Architectural Drawings submitted to the City of Waukegan about a year ago.**

2. **Structural drawings:**
   Robert Walz (PE License # 062-055186)
   drawings signed date: July 16, 2007
   Walz Engineering
   11111 Hall Road, Ste: 110
   Utica, Michigan 48317.

   **The structural drawings signed and sealed by PE not SE There is no licensed (in Illinois) structural    engineer's seal on the drawings. The plan layouts are in violation of copy right of Nova Design Build, Inc.'s drawings submitted to the City of Waukegan about a year ago.**

1

9-24-07 / Mr. John J. Jurkovac Sr. / Nova Design Build, Inc.

On 9-21-07 morning I was contacted by the City of Waukegan. I was told they had found the mechanical, electrical and plumbing drawings if I wanted to inspect them. I visited the building department at 1:15 PM. I was given a permit set to inspect. (I was surprised to see that I had fill out freedom of information form to see my own drawings).This set was the same set submitted by my office over a year ago with architectural, structural, mechanical, electrical, plumbing, fire protection permit drawings (sealed and signed by me and my structural and professional engineers). As per my letter dated 9-14-07 to you, my office has withdrawn completely from the project until further notice in writing.

3. **Mechanical, Electrical, Plumbing:**

> **As far as my office's records are concerned there are no (including structural) mechanical, electrical, plumbing   engineers of the record on the project for the construction in progress. Use of Nova Design Build, Inc's drawings is not permitted until further written notice.**

Any use of the drawings and documents (architectural, structural, mechanical, plumbing, electrical) prepared by Nov design build, Inc. in reference with the  permit and inspections for the above noted construction is hereby prohibited until further written notice.

I am in the process of getting legal advice for the solution to this mockery created by the owner(s), the builder and the professionals who have lost sense of what is legal and what is not legal.

Sincerely,

Himanshu J. Modi
For Nova Design Build, Inc.

CC:  Mr. Jody Lanning, Assistant Building Commissioner, and HVAC Inspector, City of Waukegan .
Mr. Steven G. Lenzi, Fire Marshal, City of Waukegan.
Mr. Dan Young, Asst. Chief Fire Dept., City of Waukegan.
Mr. David Marion, Asst. Building Inspector, City of Waukegan.
Mr. Mike Bergquist, Plumbing Inspector, City of Waukegan.
Mr. Jeff Oove, Electrical Inspector, City of Waukegan.
Mr. Steinhelmer, Public Health Department , State of Illinois
Mr. Kevin Woodard, IHG
Mr. Geroge Spathis,
File

2

# Exhibit

# G-017

Sep 28 2007 1:19PM    Vega Group                    1-847-564-1473              p.1

Copyright Office fees are subject to change.
For current fees, check the Copyright Office Date: 9-28-07 No. of Pages 4
website at www.copyright.gov, write the Copy- To: Ma Seatha's
right Office, or call (202) 707-3000.         SHAN GUSSIS FISHING GUIDE

Company:
Fax #: 312-375-0564

From: Himanshu J. Modi
Nova Design Build Inc.

Fax # (847) 564-1473
Phone # (847) 564-1058

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

VA          VAU

EFFECTIVE DATE OF REGISTRATION

Month       Day       Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

# 1

**Title of This Work ▼**

MOTEL PROJECT-1

**NATURE OF THIS WORK ▼** See instructions

ARCHITECTURAL DESIGN DRAWINGS

**Previous or Alternative Titles ▼**

N.A.

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

# 2

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**a** NAME OF AUTHOR ▼

HIMANSHU J. MODI

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼
11-4-1958

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of U.S.A.
Domiciled in U.S.A.

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes ☒ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous?    ☐ Yes ☒ No

**Nature of Authorship** Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☒ Architectural work

**b** Name of Author ▼

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of _____
Domiciled in _____

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous?    ☐ Yes ☐ No

**Nature of Authorship** Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

# 3

**a** Year in Which Creation of This Work Was Completed
2006
This information must be given in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month 6 Day 19 Year 2006
U.S.A. Nation

# 4

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

HIMANSHU J. MODI
3036 PAWTUCKET ROAD
NORTHBROOK          IL 60062

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DE[POSITS RECEIVED]

FUNDS RE[CEIVED]

DO NOT WRITE HERE
OFFICE USE ONLY

**DEFENDANT'S EXHIBIT**
G-017

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.    DO NOT WRITE HERE
• See detailed instructions.    • Sign the form at line 8.    Page 1 of ___ pages

| EXAMINED BY | | FORM VA |
| --- | --- | --- |
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

FEW ELEMENTS COMPILED FROM FRANCHISE MOTEL
PROTOTYPE DESIGN. LAID OUT AND ARRANGED, MODIFIED
IN ORIGINAL (UNIQUE) WAY.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

See instructions before completing this space.

**6**
a
b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                          Account Number ▼

**7**
a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

HIMANSHU J. MODI
3036 PAWTUCKET ROAD
NORTHBROOK IL. 60062

Area code and daytime telephone number   ( (847)-564-1056        Fax number   ( (847) 564-1473
Email   hjmodi@gmail.com

**b**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶ {
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
}

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

HIMANSHU J. MODI                                    Date 9-26-07

Handwritten signature (X) ▼

x  Himanshu J. Modi

**8**

Certificate will be mailed in window envelope to this address:

| Name ▼ | HIMANSHU J. MODI |
| --- | --- |
| Number/Street/Apt ▼ | 3036 PAWTUCKET ROAD |
| City/State/ZIP ▼ | NORTHBROOK IL. 60062 |

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

**9**

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form VA—Full    Rev: 07/2006    Print: 07/2006—30,000    Printed on recycled paper                    U.S. Government Printing Office: 2004-820-954/60,125

# Exhibit

# G-018

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VA 1-627-430

**Effective date of registration:**

September 28, 2007

## Title

**Title of Work:** Motel Project - 1

**Nature of Work:** Architectural Design Drawings

## Completion/ Publication

**Year of Completion:** 2006

**Date of 1st Publication:** June 19, 2006        **Nation of 1st Publication:** United States

## Author

**Author:** Nova Design Build, Inc.

**Author Created:** Architectural work

**Work made for hire:** Yes

**Citizen of:** United States        **Domiciled in:** United States

**Year Born:** 1958

**Anonymous:** No        **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Nova Design Build, Inc.

3036 Pawtucket Road, Northbrook, IL, 60062

## Limitation of copyright claim

**Material excluded from this claim:** Few Elements compiled from franchise motel prototype design. Laid out and arranged, modified in original (unique) way.

**Previously registered:** No

## Certification

**Name:** Himanshu J. Modi

**Date:** September 26, 2007

Page 1 of 2

IPN#:

Registration #:   VA0001627430

Service Request #:   1-19006513

Himanshu J. Modi
3036 Pawtucket Road
Northbrook, IL 60062

# Exhibit

# G-020



# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = modi
Search Results: Displaying 18 of 629 entries



Labeled View

### *MOTEL PROJECT - 1R.*

|  |  |
|---|---|
| **Type of Work:** | Visual Material |
| **Registration Number / Date:** | VA0001631018 / 2008-01-07 |
| **Application Title:** | MOTEL PROJECT - 1R. |
| **Title:** | MOTEL PROJECT - 1R. |
| **Description:** | Architectural drawings. |
| **Copyright Claimant:** | Himanshu J. Modi, 1958- . Address: 3036 Pawtucket Road, Northbrook, IL 60062 |
| **Date of Creation:** | 2006 |
| **Date of Publication:** | 2006-06-19 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Himanshu J. Modi, 1958- ; Domicile: United States; Citizenship: United States. Authorship: Architectural work. |
| **Pre-existing Material:** | Few elements compiled from Franchise Motel proto type design, laid out and arranged, modified in original (unified) way. |
| **Basis of Claim:** | New architectural work changes. |
| **Copyright Note:** | C.O. correspondence. |
| **Names:** | Modi, Himanshu J., 1958- |





| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format [ Full Record ▾ ] ( Format for Print/Save ) |
| Enter your email address: [                    ] ( Email ) |

# Exhibit

# G-021

## Division of
## Professional Regulation

Daniel E. Bluthardt, Director

www.idfpr.com

**Rod R. Blagojevich, Governor**

[Start a New Search](#)                                              [Printer Friendly View](#)

### SEARCH FOR LICENSEE BY PROFESSION:
### Design Firm Professional Registration
### THERE ARE 4 RECORDS WHOSE NAME CONTAINS: nova

| Licensee's Name | DBA / AKA | License Number | License Status | City, State | Original Issue Date | Current Exprtn | Ever Discplned? |
|---|---|---|---|---|---|---|---|
| NOVA ENGINEERING PC | | 184003055 | ACTIVE | LANSING, IL | 07/12/2001 | 04/30/2009 | N |
| NOVA ENVIRONMENTAL SERVICES INC | | 184001648 | NOT RENEWED | CHASKA, MN | 10/18/1995 | 04/30/1997 | N |
| NOVA GROUP INC OF MISSOURI | | 184000277 | ACTIVE | HAZELWOOD, MO | 01/27/1995 | 04/30/2009 | N |
| NOVAK ENGINEERING INC | | 184003611 | NOT RENEWED | JACKSON, MI | 02/18/2003 | 04/30/2005 | N |

## [1]

Express Access License Look-Up has been approved for use as a primary source for verification by the Joint Commission of Accreditation of Healthcare Organizations and the National Committee for Quality Assurance.

If the "Ever Disciplined" field contains a "Y," there has been disciplinary action taken against this license. Click on the "Y" to view details of the disciplinary action. If you wish to view comprehensive reports in Adobe Acrobat format for disciplines that occurred after September 1996, click **HERE**. The Illinois Department of Professional Regulation publishes a monthly report detailing disciplinary action taken by the Department. Each Disciplinary Report is a listing of all licensees disciplined by the Department within a given month. The information includes the name of the disciplined professional, the city where he/she was practicing at the time of action, the discipline imposed and a brief description of the reason for the discipline. All **Monthly Disciplinary Reports** are accurate on the date of issuance or initial date of publication. However, disciplinary actions may be subject to further court orders that may stay, affirm, reverse, remand or otherwise alter Department disciplinary orders. Please note that discipline which has been reversed by court order will not appear in this summary of discipline.

Click **here** for definitions of the different types of disciplinary actions the Department may impose.

**NOTE:** This license look-up is accurate for the current license status, but due to computer conversions, the original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a computer generated date, not the original issuance date. For original issuance dates, please contact the Department.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NOVA DESIGN BUILD, INC. AND ANNEX BUILDERS LLC, | ) Case **08 C 2855** |
| Plaintiffs, | ) |
| v. | ) Judge Samuel Der-Yeghiayan |
| GRACE HOTELS, LLC, MUKESH BHEDA, | ) |
| LYONS DESIGN GROUP, INC, ADAM LYONS, ROBERT WALZ, | ) Magistrate Valdez |
| JS CAPITAL CONSTRUCTION, INC., AND JEFF SCHMITZ | ) |
| Defendants. | ) |

# DECLARATION OF MUKESH BHEDA

1.  I am a managing partner of Grace Hotels, LLC, with business address 3223 Border Rd, Geneva IL 60134.

2.  I have personal knowledge of the facts set forth here, they would be admissible in evidence, and I am competent to testify as to the matters here stated.

3.  Attached as Exhibit G-001a is a true and accurate copy of selected pages of the Grace Hotels, LLC (hereafter Grace Hotels) Holiday Inn Express® Hotel & Suites Hotel New Development License Agreement, showing proprietary rights of Licensor, Holiday Hospitality Franchising, Inc., which include "confidential or proprietary information standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel" (¶1B) and "Licensor's unrestricted and exclusive ownership of the System and any element(s) or component(s) thereof" (¶7A).

4.  The Agreement (Exhibit G-001a) also provides "All improvements and additions whenever made to or associated with the System by the parties hereto or anyone else, and all service marks, trademarks, copyrights, and service mark, trademark, domain name or similar registrations at any time used, applied for or granted in connection with the System, and all goodwill arising from Licensee's use of Licensor's marks shall inure to the benefit of and become the property of Licensor" (¶7A).

*Nova Design Build v Grace Hotels* • **08 C 2855** • Declaration of **Mukesh Bheda**, Jun08  Page 1/3

5.  Attached as Exhibit G-002a is a true and accurate copy, reduced in size, of the Drawing Index (cover page) of the Holiday Inn Express , Express Prototype Straight Pavilion.

6.  Attached as Exhibit G-002b is a true and accurate copy, enlarged in size, of the Proprietary Notice section of the Drawing Index (cover page) of the Holiday Inn Express, Express Prototype Straight Pavilion.

7.  Attached as Exhibit G-003 is a true and accurate copy of the accepted proposal by Nova Design Build, Inc. (hereafter Nova Design).

8.  Attached as Exhibit G-004 are true and accurate copies of the front and back sides of Grace checks paid to Nova Design, totaling Seventy One Thousand Five Hundred Dollars ($71,500) and dated from March 18, 2006 and April 9, 2007.

9.  Attached as Exhibit G-005 is a true and accurate copy of the November 13, 206 signed settlement agreement between Grace and Nova Design.

10. Attached as Exhibit G-006 is a true and accurate copy of the waiver signed by Himanshu Modi on November 13, 2006, in which Himanshu Modi confirmed that for his companies, including Nova and Annex Builders, he and they were "not interested in construction of H.I.Exp. Lakehurst Road, Waukegan, IL."

11. Attached as Exhibit G-008 is a true and accurate copy of a photograph taken late April 2008 of the Holiday Inn Express at Waukegan

12. Attached as Exhibits G-009 through G-012 are true and accurate copies of sketches prepared by me for Grace Hotels before Mr. Modi or Nova Design were retained for the project.

13. My drawings, Exhibits G-009 through G-012, are derived from the Holiday Inn Express Prototype, and are authorized by Grace's agreement with Holiday Hospitality Franchising, Inc.

14. Grace never authorized Nova Design Build, Inc., nor Annex Builders LLC, nor Himanshu Modi to apply for copyright registration of any works based in whole or part on any

proprietary drawing of Grace or of its Holiday Inn Licensor or any entity in the InterContinental Hotels Group.

15. Attached as Exhibit G-013 is a true and accurate copy of a Room Count/Bay analysis prepared by me for Grace Hotels before Mr. Modi or Nova Design were retained for the project.

16. Attached as Exhibit G-014 is a true and accurate copy of a site plan prepared for Grace by Gewalt Hamilton Associates, Inc., civil engineers, before Mr. Modi or Nova Design were retained for the project.

17. Attached as Exhibit G-015 is a true and accurate copy of a February 10, 2006 letter from the City of Waukegan, approving the site plan.

18. Attached as Exhibit G-016 are true and accurate copies of letters from Nova Design to CIT Lending Services (September 28, 2007) and to the City of Waukegan (September 24, 2007), providing notification that Nova Design has withdrawn from the Holiday Inn Express project.

19. Exhibits G-001a, G-002a, G-002b, G-003 through G-006, and G-009 through G-016 are copies of records generated and/or received in the regular course of business and kept in the regular course of business.

20. I have been warned that willful false statements and the like are punishable by fine, imprisonment, or both, under 18 USC 1001, and may jeopardize the validity of this document. I declare that I am authorized to execute this document; that the facts in this document and statements made of my own knowledge are true; and all statements made on information and belief are believed to be true.

Executed this 9th day of June 2008, at Geneva, Illinois

Mukesh Bheda

*Nova Design Build v Grace Hotels* • **08 C 2855** • Declaration of **Mukesh Bheda**, Jun08  Page 3/3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NOVA DESIGN BUILD, INC. AND ANNEX BUILDERS LLC, | ) Case **08 C 2855** |
| Plaintiffs, | ) |
| v. | ) Judge Samuel Der-Yeghiayan |
| GRACE HOTELS, LLC, MUKESH BHEDA, | ) |
| LYONS DESIGN GROUP, INC, ADAM LYONS, ROBERT WALZ, | ) Magistrate Valdez |
| JS CAPITAL CONSTRUCTION, INC., AND JEFF SCHMITZ | ) |
| Defendants. | ) |

# DECLARATION OF HARSHAD JANI

1.  I am a partner of Grace Hotels, LLC, with business address 3223 Border Rd, Geneva IL 60134.

2.  I have personal knowledge of the facts set forth here, they would be admissible in evidence, and I am competent to testify as to the matters here stated.

3.  I have been directly involved in many aspects of the Waukegan, Illinois Holiday Inn Express new development project.

4.  Attached as Exhibit G-005 is a true and accurate copy of the November 13, 206 signed settlement agreement between Grace and Nova Design, signed by myself and Himanshu Modi.

5.  I personally presented the November 13, 2006 settlement agreement to Himanshu Modi at the Nova Design offices, I saw him sign, and I signed.

6.  Attached as Exhibit G-006 is a true and accurate copy of the waiver signed by Himanshu Modi on November 13, 2006 at the Nova Design offices, in my presence, in which Himanshu Modi confirmed that for his companies, including Nova and Annex Builders, he and they were "not interested in construction of H.I.Exp. Lakehurst Road, Waukegan, IL."

7.  I have been warned that willful false statements and the like are punishable by fine, imprisonment, or both, under 18 USC 1001, and may jeopardize the validity of this document. I

declare that I am authorized to execute this document; that the facts in this document and statements made of my own knowledge are true; and all statements made on information and belief are believed to be true.

Executed this <u>8th</u> day of June 2008, at _____<u>Skokie</u>_____, Illinois


Harshad Jani

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NOVA DESIGN BUILD, INC. AND ANNEX BUILDERS LLC, | ) | Case **08 C 2855** |
| Plaintiffs, | ) | |
| v. | ) | Judge Samuel Der-Yeghiayan |
| GRACE HOTELS, LLC, MUKESH BHEDA, | ) | |
| LYONS DESIGN GROUP, INC, ADAM LYONS, ROBERT WALZ, | ) | Magistrate Valdez |
| JS CAPITAL CONSTRUCTION, INC., AND JEFF SCHMITZ | ) | |
| Defendants. | ) | |

# DECLARATION OF DANIEL KEGAN, JUNE 2008

1.  I am an attorney licensed by the State of Illinois and am lead counsel representing Defendanat Grace Hotels, LLC and the non-Lyons Defendants. I have personal knowledge of the facts set forth here, they would be admissible in evidence, and I am competent to testify as to the matters here stated.

2.  Attached as Exhibit G-007 is a true and accurate copy of the Declaration of D. Franklin Moore, April 9, 2008.

3.  Attached as Exhibit G-017 is a true and accurate copy of the copyright application provided by Plaintiffs' counsel during *Nova 1*.

4.  Attached as Exhibit G-018 is a true and accurate copy of the copyright registration provided by Plaintiffs' counsel in its *Nova 2* Complaint.

5.  Attached as Exhibit G-020 is a true and accurate copy of the copyright registration report from the Copyright Office website, June 7, 2008.

6.  Attached as Exhibit G-021 is a true and accurate copy of the report from the website of the State of Illinois, Division of Professional Regulation, searching for a Design Firm Professional Registration license for Plaintiff Nova Design Build, Inc.

7.  I have been warned that willful false statements and the like are punishable by fine, imprisonment, or both, under 18 USC 1001, and may jeopardize the validity of this document. I

declare that I am authorized to execute this document; that the facts in this document and statements made of my own knowledge are true; and all statements made on information and belief are believed to be true.

Executed this 9th day of June 2008, at Chicago, Illinois

_/s/ daniel kegan/_____

Daniel Kegan

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NOVA DESIGN BUILD, INC. AND ANNEX BUILDERS LLC, | ) | Case **07 C 6369** |
| Plaintiffs, | ) | |
| v. | ) | Judge John F Grady |
| GRACE HOTELS, LLC, MUKESH BHEDA, | ) | |
| LYONS DESIGN GROUP, INC, ADAM LYONS, ROBERT WALZ, | ) | Magistrate Brown |
| CAPITAL CONSTRUCTION LLC, AND JEFF SCHMITZ | ) | |
| Defendants. | ) | |

# DECLARATION OF D. FRANKLIN MOORE, JR.

I, D. Franklin Moore, Jr., declare the following:

1.    I am Vice President, Associate General Counsel, InterContinental Hotels Group, Three Ravinia Drive, Suite 100, Atlanta Georgia 30346-2121.

2.    I have personal knowledge of the matters here asserted and am competent to testify to them.

3.    A company in the InterContinental Hotels Group, Six Continents Hotels, Inc. ("SCH"), a Delaware corporation, owns the trademarks for several famous hotel brands, including HOLIDAY INN, HOLIDAY INN EXPRESS, CROWNE PLAZA, HOTEL INDIGO, STAYBRIDGE SUITES, and CANDLEWOOD SUITES. InterContinental Hotels Group ("IHG") is the name used to publicly identify SCH and its affiliated companies.

4.    As of the end of February 2008, in IHG's Americas Region (North, Central, and South America), there were over 1,600 HOLIDAY INN EXPRESS hotels, with over 135,000 rooms. HOLIDAY INN EXPRESS hotels are also located in Europe, the Middle East, Africa, and Asia Pacific.

5.    As of the end of February 2008, in IHG's Americas Region, there were over 950 HOLIDAY INN hotels, with over 175,000 rooms. The HOLIDAY INN brand was founded in 1952.

6.    Nearly all Holiday Inn and Holiday Inn Express hotels in the Americas are built, owned, and operated by franchisees.

7.    To ensure consistency with HOLIDAY INN and HOLIDAY INN EXPRESS design and construction brand standards, IHG provides prototype architectural drawings to franchisees.

8.    IHG's hotel prototype architectural drawings, including those for Holiday Inn Express hotels, are proprietary; the copyrights are owned by SCH.

9.     These prototype architectural drawings generally carry a proprietary and copyright notice, such as:

> © 2003 InterContinental Hotels Group. ALL RIGHTS RESERVED. CONFIDENTIAL AND PROPRIETARY - DO NOT MODIFY, DUPLICATE, REPRODUCE, DISCLOSE OR TRANSFER THESE MATERIALS WITHOUT THE EXPRESS WRITTEN PERMISSION OF InterContinental Hotels Group.

10.    IHG generally permits franchisees to use its prototype architectural drawings in building new hotels, including allowing franchisees to propose modifications for particular site or local condition suitability.

11.    IHG does not generally permit franchisees or their agents to register a copyright claim based in any part on a work derived from IHG proprietary drawings.

12.    IHG has not authorized Himanshu J. Modi, Nova Design Build, Inc., nor Annex Builders LLC to register any copyright claim based in whole or part on any IHG proprietary drawing.

13.    The copyright application signed by Himanshu J. Modi and dated September 26, 2007 for "Motel Project-1" was not authorized by any company in IHG.

14.    I have been warned that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code. I declare that all statements made of my own knowledge are true and all statements made on information and belief are believed to be true.

April 9, 2008

D. Franklin Moore, Jr.
D. Franklin Moore, Jr.

In the

# United States Court of Appeals

### For the Seventh Circuit

———————

Nos. 06-2043 & 06-3692

RIVIERA DISTRIBUTORS, INC., and
LARRY L. HARTLEY,

*Plaintiffs-Appellees,*

*v.*

TIMOTHY S. JONES and MIDWEST
ELECTRONIC SPECIALTIES, INC.,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Central District of Illinois.
No. 04-1430—**Michael M. Mihm**, *Judge.*

———————

ARGUED OCTOBER 25, 2007—DECIDED FEBRUARY 20, 2008

———————

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
KANNE, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Both sides to this litiga-
tion hold copyrights in software. Plaintiffs (which we
call Riviera) contend that the "Stars and Stripes" video-
poker game sold by defendants (which we call Midwest)
infringes Riviera's "Americana" source code. (There are
several other games and sets of code, which we bypass to
simplify the exposition.) After the suit had been pending
for more than a year—and long after the time for a
voluntary dismissal, without prejudice, under Fed. R. Civ.

P. 41(a)(1) had passed—Riviera filed a motion to dismiss. It conceded that it lacked the evidence to prove its claim, though hoping to acquire better evidence in the future it asked the district judge to dismiss without prejudice under Rule 41(a)(2). The district judge dismissed the case, but with prejudice.

Midwest then applied for attorneys' fees under §101 of the Copyright Act of 1976, codified at 17 U.S.C. §505. That section authorizes a district court to "award a reasonable attorney's fee to the prevailing party as part of the costs." Unlike many fee-shifting statutes, which entitle prevailing plaintiffs to recover fees as a matter of course but allow prevailing defendants to recover fees only if the suit was frivolous, §505 treats both sides equally and allows an award in either direction. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Since *Fogerty* we have held that the prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees. See, e.g., *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005); *Assessment Technologies of Wisconsin, LLC v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004).

The district court denied Midwest's request for fees, ruling that it is not the prevailing party. The judge wrote that he "did not in any way pass on the merits of the litigation. . . . [T]here has been no evidence of lack of merit to [Riviera's] copyright infringement claims and no finding with respect to the merits of the case. The Court therefore does not believe that [Midwest is] entitled to prevailing party status on the facts of this case."

This approach supposes that the content of a judge's opinion is what makes a litigant a prevailing party. If the judge sustains a litigant's position on the merits, then it "prevails"; otherwise not. The Supreme Court took a different view in *Buckhannon Board & Care Home, Inc. v.*

*West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), which holds that a litigant "prevails" (for the purpose of fee-shifting statutes) when it obtains a "material alteration of the legal relationship of the parties", 532 U.S. at 604, quoting from *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792–93 (1989). A judgment in a party's favor has such an effect, which is why a consent decree confers prevailing-party status even though everyone denies liability as part of the underlying settlement, and the judge takes no position on the merits.

Midwest obtained a favorable judgment. That this came about when Riviera threw in the towel does not make Midwest less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. Riviera sued; Midwest won; no more is required. See *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003) (dismissal under Rule 41(a)(2), with prejudice, after a plaintiff gives up makes the defendant the prevailing party). The district court recognized as much when it awarded costs to Midwest under Fed. R. Civ. P. 54. Only the "prevailing party" is entitled to costs. Because Midwest is the prevailing party for regular costs, it must be the prevailing party for the purpose of §505, which allows an award of attorneys' fees as part of costs.

What remains is the question whether this is an appropriate occasion for fee shifting. The district judge thought not, writing that "the Court rejects the suggestion that [Riviera's] pursuit of this action was frivolous, baseless, or objectively unreasonable." This is not, however, the standard for an award under §505; it is the standard used under statutes such as 42 U.S.C. §1988 that authorize an award to a prevailing defendant only if the suit is frivolous or vexatious. *Fogerty* rejects such an asymmetric approach for §505.

Is there any reason not to honor the presumption that the prevailing party, plaintiff *or* defendant, recovers attorneys' fees under §505? The district judge observed that he denied Midwest's motion to dismiss the complaint, but that's a common step on the way to a decision and not a good reason to force the prevailing party to swallow the legal costs of the suit. The judge hinted that Midwest should be penalized for abandoning an attempt at mediation, but any litigant is entitled to insist that its case be adjudicated. Curtailing mediation actually held down the costs of defense. The district court also chastised Midwest for delay in responding to Riviera's discovery requests. The judge would have been within his rights to lop off any fees incurred to frustrate or drag out discovery, but an award of zero for the case as a whole is not an appropriate response to the wrangling that is regrettably common in discovery.

This case turns out to be an especially good candidate for fee shifting under §505, because it was filed in the teeth of an agreement not to sue. Riviera and Midwest have been at each others' throats for years, and this is the second suit based on fundamentally the same claim of infringement. Eventually the first suit was settled. One clause of the settlement provides for alternative dispute resolution of any future claims:

> In the event that either party hereto believes that its rights as to the Riviera [intellectual property] Rights or Enhancements have been violated by [Midwest], then such source code and programs shall be provided to a mutually agreeable, independent software expert who shall inspect and review such applicable source code and programs and determine such questions. The parties agree to be bound by the findings of the independent software expert.

Nos. 06-2043 & 06-3692                                    5

Riviera says that, after the settlement, Midwest went right on infringing its copyrights. But the point of a clause such as the one quoted above is to submit to an expert the question *whether* any of Midwest's games uses Riviera's source code. Riviera can't justify this suit by assuming an affirmative answer to the very question that the expert is supposed to decide.

When Midwest moved to dismiss Riviera's complaint, it brought this clause to the district judge's attention. The judge's order denying the motion to dismiss does not mention Riviera's agreement to have an expert, rather than a judge, resolve any controversy about infringement. Perhaps the judge assumed that, because this agreement is not a traditional arbitration clause, it is ineffectual. But we held in *Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797 (7th Cir. 2005), that agreements to engage in alternative dispute resolution must be enforced, if they are valid as a matter of state contract law, whether or not they are aptly labeled "arbitration." In *Omni Tech* the agreement was one to have a financial dispute resolved by an accountant; here the agreement is one to have a dispute about how software source code has been used resolved by a programmer. There is no basis on which *Omni Tech* can be distinguished—and Riviera does not even try. Its sole argument is that by asserting that infringement has continued, it liberates itself from the agreement to have an expert resolve any dispute about infringement.

Riviera came to the wrong forum. Agreements such as the one between Riviera and Midwest are designed to reduce the price tag of decision-making. By filing another suit, Riviera forced Midwest to bear the very expenses that the parties had agreed to avoid. The party responsible for creating excessive legal costs must bear them itself in the end.

6                                                Nos. 06-2043 & 06-3692

This conclusion makes it unnecessary to discuss the parties' other disputes, such as whether by filing a second suit Riviera entitled Midwest to an award under 28 U.S.C. §1927.

The judgment is reversed, and the case is remanded for an award of reasonable attorneys' fees to Midwest under 17 U.S.C. §505. The award should include the legal fees that Midwest has incurred to vindicate its rights on appeal.

A true Copy:

    Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*

services by relevant consumers. While the marks may also identify the futures contracts, again contracts which, on this record, are unique to applicant, the contracts are an integral and essential component of the identified services, that is, the operation of a futures exchange. *In re Ancor Holdings, LLC.*, 79 USPQ2d 1218, 1220-1221 (TTAB 2006).

The contracts embody the intangible rights which are being exchanged when customers use applicant's futures exchange services. Under the circumstances, the connection between the marks and the services is evident and need not be stated explicitly as the Examining Attorney implies. *In re Metriplex Inc.*, 23 USPQ2d at 1316. In fact, when we view the marks at issue here in the full context of the specimens, in each instance the mark would be perceived readily: SUGAR NO. 11 from "Futures Contract on Sugar No. 11 (World)," SUGAR NO. 14 from "Futures Contract on Sugar No. 14 (Domestic)" and COTTON NO. 2 from "Cotton No. 2 Futures Contract." Thus, the specimens show use of the marks in the rendering of the services.

The prominent use of the marks in the corresponding regulations further confirms the fact that relevant customers will associate the marks with applicant as the operator of the exchange. *In re Safariland Hunting Corp.*, 24 USPQ2d 1380, 1381 (TTAB 1992). Likewise, the extremely long periods of use of each of the marks by applicant provides further confirmation of this association — for over sixty-five years in the case of the SUGAR NO. 11 and SUGAR NO. 14 marks and one hundred and thirty-five years in the case of the COTTON NO. 2 mark. Also, as we indicated, the evidence of record shows a consistent, explicit association of SUGAR NO. 11, SUGAR NO. 14 and COTTON NO. 2 with applicant, and no evidence of use of these designations by anyone else.

We decline to rely on applicant's COTTON "C" registration or the third-party registrations applicant made of record. Actions on prior applications do not dictate the result in later cases. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

The Examining Attorney relies on *In re Moody's Investors Service Inc.*, 13 USPQ2d 2043 (TTAB 1989) to support his position. However, we find the *Moody's* decision distinguishable from the cases under consideration here. In that case the applicant sought to register "Aaa" for "providing ratings of fixed interest rate obligations." The issue on appeal

was whether the specimens showed use of "Aaa" as a service mark for the identified services. The specimens were publications of the applicant showing use of "Aaa" in ratings of certain securities and explaining its significance as a top rating. The *Moody's* opinion includes a quote from an article in the record in the case: "Under present commercial bank regulations issued by the Comptroller of the Currency, bonds rated in the top four gradations by S&P, Moody's, and Fitch - triple-A, double-A, single-A, and triple-B, or Baa - are generally considered eligible for bank investment." *Id.* at 2947, n.2. Thus, unlike the cases before us, the record included evidence that the applicant's competitors also used "triple-A" to identify their top rated securities. In contrast, in the cases before us we have no such evidence. Rather, the evidence of record indicates not only that applicant is the only party which uses SUGAR NO. 11, SUGAR NO. 14 and COTTON NO. 2 in the operation of a futures exchange, but that applicant has done so for a very long time. Furthermore, there are significant differences between the services which were at issue in the *Moody's* case and the nature and use of the "Aaa" mark and the marks now before us.

Accordingly, we conclude that the specimens of record show use of SUGAR NO. 11, SUGAR NO. 14 and COTTON NO. 2 as service marks for "financial services, namely, futures exchange and related commodity trading services."

*Decision*: We reverse the refusals to register the marks in each of the three applications both on the ground that the marks are merely descriptive and on the ground that applicant has failed to show use of the marks as service marks.

---

## Schrock v. Learning Curve International Inc.

### U.S. District Court
### Northern District of Illinois

No. 04 C 6927

Decided January 29, 2008

## COPYRIGHTS

### [1] Rights in copyright; infringement — Ownership of copyright — Derivative works (§ 213,0306)

Plaintiff's photographs of copyrighted toys are derivative works, since plaintiff's two-





dimensional depictions have recast, transformed, or adapted preexisting three-dimensional toys into another medium, thus creating derivative works based upon preexisting works; plaintiff does not own valid copyrights in photographs, and his infringement claims are therefore dismissed, since 17 U.S.C. § 106(2) grants copyright owner exclusive right to prepare or authorize derivative works, and party seeking to copyright derivative work must therefore obtain permission to do so from owner of copyright in underlying work, since plaintiff herein was paid by defendants to create photographs at issue, but there is no evidence that he was authorized to obtain copyrights in photographs, and since plaintiff's assertion that he was never informed by defendants that they would object to his registration of copyrights in photographs does not create inference that plaintiff had affirmative authority to register copyrights.

## JUDICIAL    PRACTICE    AND PROCEDURE

### [2] Jurisdiction — Pendent jurisdiction (§ 405.15)

State-law claims for breach of bailment and conversion, asserted in action for copyright infringement, are dismissed without prejudice, since defendants have been granted summary judgment on copyright claims, and state-law claims thus lack any federal mooring, and since outcome of state-law theories of recovery is not so clear that judicial economy would be disserved by dismissal that permits them to be litigated in state court.

---

Action by Daniel P. Schrock d/b/a Dan Schrock Photography against Learning Curve International Inc., RC2 Corp., RC2 Brands Inc., Gullane Entertainment Inc., Gullane Thomas Ltd., Thomas Licensing LLC, and HIT Entertainment PLC for copyright infringement, breach of bailment, and conversion. On defendants' motions for summary judgment. Motions granted as to copyright claims; state-law claims dismissed without prejudice.

Mark H. Barinholtz, Chicago, Ill., for plaintiff.

David G. Hanson and Robert S. Jones, of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis.; Scott D. Verhey, Chicago; Margaret M. Schuchardt, Matthew T. Furton, Timothy W. Brink, and David B. Abramowitz, of Locke Lord Bissell & Liddell, Chicago, for defendants.

### Shadur, S.J.:

Daniel Schrock d/b/a Dan Schrock Photography ("Schrock"), a Chicago-based professional photographer, has brought this action against a web of corporate defendants—a web that is best untangled by carving out two groupings. First, Schrock complains against the "RC2" defendants (for convenience referred to collectively by the "RC2" name), comprising Learning Curve International, Inc., RC2 Corporation and RC2 Brands, Inc. Learning Curve International, Inc. is a distributor of children's toys that was acquired in early 2003 by Racing Champions Ertl Corporation, which later changed its name to RC2 Corporation. RC2 Brands, Inc., a designer, producer and marketer of children's toys and collectibles, is a subsidiary of RC2 Corporation. As for the second group of corporate defendants (for convenience referred to collectively as "HIT Entertainment"[1]), it comprises Gullane Entertainment, Inc., Gullane Thomas Limited, Thomas Licensing LLC and HIT Entertainment, PLC (all are predecessors, subsidiaries or affiliates of HIT Entertainment Limited).

Schrock complains of copyright infringement by both RC2 and HIT Entertainment and breach of bailment and conversion by RC2. Each of the two sets of defendants has, with trial looming (at long last!), moved for summary judgment under Fed. R. Civ. P. ("Rule") 56. For the reasons set forth below, both motions are granted as to Schrock's copyright claims, while his state law claims against RC2 are denied without prejudice.

### *Summary Judgment Standard*

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (*Celotex Corp. v. Catrett*, (477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (*Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471

---

[1] Each of RC2 and HIT Entertainment is treated here for convenience as a singular noun.



(7th Cir. 2002)). But to avoid summary judgment, a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (*Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (*id.*). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant Schrock—but within the limitations created by the extent of his compliance (or noncompliance) with the strictures of this District Court's LR 56.1.[2] Here is that summary.

### Background[3]

HIT Entertainment owns the copyright in "Thomas & Friends" properties (HIT St. ¶ 8) and has licensed RC2 to produce toys based on those properties (HIT St. ¶ 9, RC2 St. ¶ 9). Pursuant to that license, RC2 has developed

---

[2] LR 56.1(a) requires each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each such fact. Then LR 56.1(b) requires the nonmoving party to respond point by point, with citations to the record in support of (1) any claimed dispute as to the movant's variation of the facts and (2) any additional facts that the nonmovant chooses to assert. LR 56.1's goal of simplifying the determination whether there are or are not motion-defeating material factual issues has been sidetracked somewhat by cross-motions to strike the other side's submissions, initiated by Schrock and countered by RC2 (with HIT Entertainment then joining RC2's motion by reference). While neither party conforms perfectly to the prescripts of LR 56.1, each has provided sufficient information for this Court to rule on the RC2-HIT Entertainment motions. Given this opinion's ultimate holding that Schrock lacked copyright protection in his images, many of the factual assertions in the parties' LR 56.1 statements had no bearing on resolution of the motions.

[3] Each of HIT Entertainment and RC2 submitted a separate LR 56.1(a) statement. HIT Entertainment's statements will be referred to as "HIT St. ¶ —," Schrock's responses as "Schrock HIT St. ¶ —" and Schrock's additional statements as "Schrock HIT Add. St. ¶ —." RC2's statements and Schrock's response and additional statements will be treated likewise. Where the factual assertion in a party's LR 56.1 statement is undisputed by the opposing party, this opinion will cite only to the original statement. Schrock's combined memorandum in opposition to the two Rule 56 motions will be cited as "Schrock Mem. —."

---

hundreds of different toys[4] with global distribution (HIT St. ¶ 10, RC2 St. ¶ 10).

From 1999 through 2003 RC2 (actually Learning Curve International, Inc. at that time) retained Schrock to create product photographs of some of its wares, including some of its Thomas & Friends toys, for use in marketing (RC2 St. ¶ 14, Schrock Mem. 6). In 2004 Schrock registered copyrights for a large number of photographs that he shot for RC2, including some Thomas & Friends products (HIT St. ¶ 21, Schrock Mem. 6).

Out of some 100 written invoices submitted by Schrock to RC2 relating to the photo shoots, at least 72 included a "usage restriction" limiting RC2's use of the photographs to two years (Schrock RC2 St. ¶¶ 51, 70). Schrock was paid in full for all of his submitted invoices (Schrock RC2 Add. St. ¶ 19). After the expiration of the claimed two-year "usage restriction" and the filing of this lawsuit, RC2 and HIT Entertainment have continued to use those product photographs over Schrock's objection (Schrock HIT Add. St. ¶¶ 39-40, Schrock RC2 Add. St. ¶ 36, Schrock Mem. 8).[5]

### Validity of the Claimed Copyright

Two elements are required to maintain a successful copyright infringement action: Plaintiff must own a valid copyright, and defendant must have copied original elements of the copyrighted work (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 [18 USPQ2d 1275] (1991)). Schrock falls at the first hurdle.

Before this opinion turns to the issue that it finds dispositive, something needs to be said about what RC2 sets up as its first line of substantive attack: "that the works lack sufficient originality to be copyrightable" (its Mem. 2, followed by its Mem. Section II at 3-6).[6]

---

[4] RC2's Thomas & Friends toys generally take the form of scaled-down train engines, railcars and segments of railway track, along with the occasional tram, lorry or assorted vehicle (HIT Ex. I, 2002 RC2 Catalog).

[5] Schrock also charges copyright infringement through the impermissible use of some of his photographs (e.g., reproduction on RC2's website, while permissible usage was limited to catalog and product packaging). But given this opinion's conclusion that Schrock possessed no copyright over his photographs, the bases for his infringement claims are immaterial.

[6] HIT offers up the same lack-of-originality argument. Though it gives that contention third rather than





Schrock quite properly responded to that contention by pointing to the long history of recognition of photography as an art form entitled to protection, a history (though Schrock does not go into the detail marshaled by the Ninth Circuit's *Ets-Hokin* opinion cited a bit later in this opinion) that began with President Lincoln's signing into law (just a month before his assassination) a statute that made "photographs and the negatives thereof" copyrightable (13 Stat. 540), that then continued with the Supreme Court's upholding of the constitutionality of that statute in *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884), that then continued over the years through such classic decisions as that by Judge Learned Hand (then a District Judge) in *Jewelers' Circular Pub. Co. v. Keystone Pub Co.*, 274 F. 932 (D.C. N.Y. 1921), aff'd 281 F. 183 (2d Cir. 1922) and that has continued to the present day (see, e.g., our Court of Appeals' opinion in *Schiller & Schmidt v. Nordisco*, 969 F.2d 410 [23 USPQ2d 1762] (7th Cir. 1992)).

In fact courts have been generous to the photographer and his or her photographs on the subject of originality, demanding not a great deal in that respect—a process that began with the Supreme Court's reference to the photograph of Oscar Wilde involved in *Burrow-Giles*. And in that respect this Court is not about to conduct a comprehensive review of Schrock's work of the type that it essayed in *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F.Supp.2d 838 (N.D. Ill. 2003), particularly because any such parsing in this instance would involve a high degree of subjectivity.

For that reason and others this opinion eschews addressing the "originality" issue, turning instead to the question whether Schrock's photographs are derivative works. And as will be seen, what controls that inquiry is not that Schrock's work products are photographs simpliciter (thus meriting copyrightability under the generous standards referred to earlier), but are rather photographs of objects that are *themselves* copyrighted, bringing the case within the term of art that the Copyright Act (at 17 U.S.C. §101[7]) defines as a "derivative work." On then to that analysis.

*Derivative Work?*

Here is the definition of "derivative work" in Section 101:

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

That concept must be examined in the context of Schrock's photographs having depicted copyrighted (or copyrightable) toys: plastic replicas of Thomas the Tank Engine and his anthropomorphic friends[8] from the fantastical island of Sodor.[9]

Ink has been spilled on both sides of the caselaw's debate over whether a photograph of a copyrighted work is a derivative work. In their leading treatise on copyright law (*Nimmer on Copyright* (2007)), Professors Nimmer state that "not a great deal hinges on categorization." Hence they endorse neither position, instead pegging the copyrightability of a photograph of a copyrighted work on its level of originality under the traditional approach: "lighting, angle, perspective, and the other ingredients that traditionally apply to that artform" (*id.* § 3.03[C][3]).

This Court has no quarrel with that approach, having articulated it in its opinion in *Gentieu*, 255 F.Supp.2d at 848-49, then having applied it there in a detailed analysis. But as will be seen, that issue need not be dealt with here at all, a conclusion driven by the applicable caselaw. Hence the analysis here begins—but does not end—by turning to the debate left unresolved by Professors Nimmer—a debate well framed by two cases decided elsewhere, each handed down in 2000.

---

first place in its opening gun memorandum, it devotes nearly half of its text (its Mem. 8-14) to that subject.

[7] Further citations to the Copyright Act will take the form "Section —," omitting the prefatory "17 U.S.C."

[8] "Friends" may be too generous a designation for some of the characters in Thomas's world (see, e.g., "Diesel," HIT. Ex. I, 2002 Catalog, at 165).

[9] Of the forty-three dioceses in the Church of England, one is actually designated "Sodor and Man," although curiously enough that diocese encompasses only the Isle of Man. Whether the island of Sodor ever existed (or perhaps still exists but somehow evades today's cartographers) is well beyond the scope of this opinion.



On the one hand, *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 [55 USPQ2d 1769] (9th Cir. 2000) held that a product photograph of a Skyy vodka bottle was not a "derivative work" in statutory terms because the bottle itself was uncopyrightable—and because under Section 101 a derivative work must derive from a "preexisting work" (read: copyrightable work), a photograph of the uncopyrightable object cannot be a derivative work (*id.* at 1081). Although the *Ets-Hokin* court did not speak directly to the corollary issue now before this Court, its approach surely creates the inference that if the bottle *had* been copyrightable the photograph would have been a derivative work.

Then just less than two months later District Judge Pauley of the Southern District of New York reached the opposite conclusion in *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F.Supp.2d 301 [56 USPQ2d 1813] (S.D. N.Y. 2000).[10] Holding that product photographs of picture and mirror frames were not derivative works, Judge Pauley stated (*id.* at 306):

> While the *Ets-Hokin* court correctly noted that a derivative work must be based on a "preexisting work," and that the term "work" refers to a "work of authorship" as set forth in 17 U.S.C. § 102(a), it failed to appreciate that any derivative work must recast, transform or ad[a]pt the authorship contained in the preexisting work. A photograph of Jeff Koons' "Puppy" sculpture in Manhattan's Rockefeller Center, merely depicts that sculpture; it does not recast, transform, or adapt Koons' sculptural authorship. In short, the authorship of the photographic work is entirely different and separate from the authorship of the sculpture.

Even though our own Court of Appeals has not had occasion to address the issue as directly, some guidance can be gleaned from two Seventh Circuit cases. Each speaks to the subject via dictum, but the voice in which each speaks is unambiguous.

Most recently, whether books containing photographs of copyrighted Beanie Babies infringed upon the copyright holder's rights was at issue in *Ty, Inc. v. Publ'ns. Int'l Ltd.*, 292 F.3d 512 [63 USPQ2d 1055] (7th Cir. 2002),

where defendant conceded that the photographs of the copyrighted works constituted derivative works (*id.* at 515). While the court noted that concession on a couple of occasions in describing the derivative status of the photographs (*id.* at 515, 519), it elsewhere stated in its own terms that the photographs were derivative works (*id.* at 519, 523) (emphasis on "essentially" in original):

> But *For the Love of Beanie Babies* might well be thought *essentially* just a collection of photographs of Beanie Babies, and photographs of Beanie Babies are derivative works from the copyrighted Beanie Babies themselves.

\* \* \*

A similar judgment might be possible here with regard to *For the Love of Beanie Babies*, which we described as basically a picture book; and the pictures are derivative works from Ty's copyrighted soft sculptures.

And some 15 years earlier *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1201 [2 USPQ2d 1499] (7th Cir. 1987) had delivered the same message, albeit in conclusory fashion without explanatory analysis. Here is what the court said then:

> Rumbleseat argues among other things that the Post failed to register its copyrights properly. . . . It seems more likely though, that what happened . . . is that the Post failed to perfect copyright in its derivative works—the photographs, printed in the magazine, of Rockwell's illustrations.

[1] Schrock's photographs are product photographs—depictions of Thomas & Friends toys. Such depictions portray the three dimensional toy in two dimensions. In the words of Section 101, such photographs "recast, transform[] or adapt[]" the preexisting three dimensional toy into another medium, thus creating a derivative work "based upon" the preexisting work. Such photographs are no less derivative works than are three dimensional embodiments of two dimensional drawings (e.g., a guitar created to embody a written symbol, as in *Pickett v. Prince*, 207 F.3d 402 [54 USPQ2d 1081] (7th Cir. 2000), or porcelain dolls fashioned to embody Norman Rockwell illustrations, as in *Saturday Evening Post*, 816 F.2d at 1193). In sum, Schrock's

---

[10] Although *SHL Imaging* as a District Court opinion is of course nonprecedential, it is cited and quoted here both because it draws the line in the sand so clearly and because it is exemplary of cases taking the same view.







photographs are derivative works of the copyrightable toys that they portray.

## Copyrightability

To be sure, status as a derivative work does not of itself render a work uncopyrightable,[11] but it does alter the playing field. Because Section 106(2) grants a copyright owner the exclusive right to prepare (or to authorize) derivative works as part of its bundle of rights, a third party seeking to copyright a derivative work must have the permission of the copyright holder of the underlying work (*Pickett,* 207 F.3d at 406; *Gracen v. Bradford Exchange,* 698 F.2d 300, 302 [217 USPQ 1294] (7th Cir. 1983)). And even with such permission, Section 103(b) extends the third party's copyright only to the incremental originality over the underlying work that is present in the derivative work.

There are material parallels between this case and *Gracen.* There plaintiff Gracen painted Dorothy from "The Wizard of Oz" as part of a competition for a contract to produce paintings for a number of collectible plates (*Gracen,* 698 F.2d 301). Upon winning the competition, she turned down the contract and registered her painting for a copyright (*id.*). Nothing daunted, the plate producer used Gracen's painting as a model and commissioned another artist to create a Dorothy painting to be used on the collectible plate (*id.* at 301-02). When Gracen considered that the Dorothy plate looked too much like her own painting for comfort, she sued for copyright infringement (*id.* at 302).

Because Gracen's Dorothy painting was a work derivative of the film as the underlying work, the opinion set out to determine whether Gracen was authorized to create and copyright that derivative work (*Gracen,* 698 F.2d at 302-04). And because she had been invited to participate in the competition, the court held that Gracen had authorization to *produce* the derivative work—but what controlled a decision adverse to Gracen was that nowhere had she been given authorization to *copyright* her derivative work (*id.* at 304)[12]

Consequently Gracen lacked a copyright interest in her Dorothy painting.

In this instance Schrock was unquestionably granted rights pertaining to his derivative work photographs. To speak of his having "permission" to create them would be an understatement—in fact he was paid (quite well—some $400,000) to do so. But nowhere in the record is there any evidence even inferentially indicating that he was authorized to copyright the derivative works. Indeed, Schrock's own deposition testimony says otherwise (HIT Ex. G, Schrock Dep. 374-75):

Q: For any work that you've registered that is a photographic work of a Thomas the Tank Engine line product, have you sought permission from HIT Entertainment to do so?

A: No. I didn't know I had to do—

MR. BARINHOLTZ [Schrock's lawyer]: I would object to the form.

By MR. HANSON:

Q: Have you sought it or not?

A: No.

Q: Okay. For any registration not Thomas, that is, for any other work that you—for which you are claiming damages or remedy in this case, have you sought permission from any other entity including but not limited to RC2?

A: No.

Q: You haven't sought permission from RC2 for any of your copyright registrations?

A: No.

Nor does Schrock's assertion that he "was never informed by any personnel of RC2/LCI or HIT Entertainment that they would object to [him] registering copyrights in [his] photographs" (Schrock Ex. A, Schrock Aff. ¶ 12) create any inference that he had affirmative authority to register the copyrights. Silence in that respect cannot bespeak acceptance—after all, RC2 and HIT Entertainment were ignorant of Schrock's copyright registrations or his plans to seek them. Moreover, that Schrock affidavit faces still another difficulty: "A plaintiff cannot, however, create an issue of material fact by submitting an affidavit that contradicts an earlier deposition" (*Pourgho-*

---

[11] Indeed, Section 103(a) explains that the list of enumerated copyrightable works in Section 102 includes derivative works.

[12] There was, as well, a genuine issue of material fact as to whether Gracen had permission to exhibit the derivative work publicly. That issue has no relevance to the present dispute.





*raishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006)).

Without approval from the owner of the underlying work, approval that was totally absent here, Schrock could not obtain a copyright over his derivative works. Although Section 410(c) provides that registration of a work with the Copyright Office constitutes prima facie evidence of copyright validity, that provision creates nothing more than "simply a rebuttable presumption" (*Mid America Title Co. v. Kirk*, 59 F.3d 719, 721 [35 USPQ2d 1502] (7th Cir. 1995)). Here that presumption of copyright has been thoroughly rebutted. Thus lacking a valid copyright in the works, Schrock also—by definition—lacks the ability to maintain a suit for copyright infringement against RC2 or HIT Entertainment.[13]

### State Law Claims

[2] With Schrock's federal theory of recovery now having been revealed as not even a pumpkin, let alone a fancied coach, his remaining grievances (bailment and conversion of the photographic transparencies) find themselves like Prince Charming at the stroke of midnight—all alone at the proverbial ball without even a glass slipper to clutch. And because Schrock's state law theories of recovery (brought under the rubric of supplemental jurisdiction) now lack any federal mooring, those remaining grievances are dismissed without prejudice (the "general rule" prescribed four decades ago in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) and reiterated to this day by our Court of Appeals (among others)). In that respect, this Court expresses no view other than to say that the outcome of the state law theories of recovery is not so clear that judicial economy is disserved by their dismissal in favor of permitting them to be litigated in the state court system (if Schrock wishes to pursue them there), which can apply state law directly, rather than on a predictive basis as any federal court must do (on that score, contrast such

cases as *Sellars v. City of Gary*, 453 F.3d 848, 852 (7th Cir. 2006)).[14]

### Conclusion

Because as a matter of law Schrock does not hold a valid copyright over the photographs, his assertions of copyright infringement are dismissed, and his concomitant prayer for injunctive relief, accounting and declaratory relief as related to the copyright infringement claims are denied. In that regard there are no genuine issues of material fact, so that RC2 and HIT Entertainment are entitled to a judgment as a matter of law. And when that is coupled with the without-prejudice dismissal of Schrock's supplemental state law claims, this action is dismissed in its entirety—a final judgment.

---

## Target Brands Inc. v. Hughes

### U.S. Patent and Trademark Office Trademark Trial and Appeal Board

Opposition No. 91163556

Decided November 30, 2007

### TRADEMARKS AND UNFAIR TRADE PRACTICES

[1] **Practice and procedure in Patent and Trademark Office — Interpartes proceedings — Standing (§ 325.0303)**

### JUDICIAL PRACTICE AND PROCEDURE

Procedure — Parties; standing (§ 410.07)

Opposer, in order to have standing to object to registration of allegedly descriptive mark, need not be manufacturer or seller of goods in connection with which proposed mark is used as designation, but need only be competitor of applicant, such that registration of mark would be inconsistent with right of opposer to use designations on same or similar goods; in present case, opposer has standing to bring

---

[13] Although RC2 prevails on that issue, it has overreached considerably by also claiming to be the joint author of Schrock's photographs (its Mem. 8-10 and R. Mem. 8-11). This Court rejects that contention as lacking in merit—a holding that may be relevant if the parties' dispute is revived in another forum on the state law claims that are not decided here.

[14] By way of example (and with no intention of being exhaustive), the briefing on the current motions has not sufficiently fleshed out the effect of Schrock's effort at setting contractual limits on the further direct use (not copying) of his work product even in the absence of copyright.

Slip Copy, 2007 WL 2893637 (S.D.Ill.)
**(Cite as: 2007 WL 2893637 (S.D.Ill.))**

C

Weidner v. Carroll
S.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
Chad WEIDNER, an individual, Karolien
Walravens, an individual, Plaintiffs,
v.
Rusty CARROLL, an individual, R2C2, Inc., a cor-
poration, Defendants.
**No. 06-CV-782-DRH.**

Sept. 28, 2007.

Douglas S. Teasdale, Teasdale, Murphy et al., St.
Louis, MO, Evan A. Parke, John J. Dabney, Patricia
E. Chow, McDermott, Will et al., Washington, DC,
for Plaintiffs.
Jeffery W. Green, Legal Solutions, Carbondale, IL,
for Defendants.

### *MEMORANDUM AND ORDER*

HERNDON, District Judge.

### *I. Introduction*

**\*1** Now before the Court is Defendant's Motion to
Dismiss. (Doc. 11.) Defendants move to dismiss the
Complaint in its entirety based on a number of the-
ories too numerous to summarize. Plaintiffs re-
spond in opposition. (Doc. 13.) After careful con-
sideration, the Court finds that each of Defendants'
arguments, save one, lacks merit. Therefore, the
motion to dismiss is **DENIED in part** and **GRAN-
TED in part.**(Doc. 11.)

### *II. Background*

On October 12, 2006, Plaintiffs Chad Weidner and
Karolien Walravens, on their own behalf and as
representatives of a class of individuals and entities
similarly situated, filed a Complaint against De-
fendants Rusty Carroll and R2C2, Inc. ("R2C2") al-

leging copyright infringement, violation of Section
43(a) of the Lanham Act, unfair competition under
Illinois statutes and common law, violation of fed-
eral RICO statute, and unjust enrichment. (Doc. 2.)
Plaintiffs further allege that Defendants own and
operate several web sites that sale term papers,
without proper authorization from the actual own-
ers. The Complaint defines the putative class as "all
persons or entities who are the owners of the mater-
ials offered to the public through Carroll's Term Pa-
per Web Sites."(Doc. 2, ¶ 13.)

### **III. *Motion to Dismiss***

**A. Legal Standards**

**1. Federal Rule of Civil Procedure 12(b)(6)**

When ruling on a motion to dismiss for failure to
state a claim under FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6), the Court must look to the
complaint to determine whether it satisfies the
threshold pleading requirements under FEDERAL
RULE OF CIVIL PROCEDURE 8. Rule 8 states
that a complaint need only contain a "short and
plain statement of the claim showing that the plead-
er is entitled to relief."FED.R.CIV.P. 8(a)(2). In a
recent opinion issued on May 21, 2007, the Su-
preme Court held that Rule 8 requires that a com-
plaint allege "enough facts to state a claim to relief
that is plausible on its face" to survive a Rule
12(b)(6) motion. *Bell Atlantic Corp. v. Twombly,* ---
U.S. ----, 127 S.Ct. 1955, 1974 (2007). In other
words, the Supreme Court explained it was "a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' " by providing "more than
labels and conclusions," because "a formulaic recit-
ation of the elements of a cause of action will not
do...." *Id.* at 1964-65 (quoting *Papasan v. Allain,*
478 U.S. 265, 286 (1986)). The Seventh Circuit has
read the *Bell Atlantic* decision to impose "two easy-
to-clear hurdles":

Slip Copy
Slip Copy, 2007 WL 2893637 (S.D.Ill.)
**(Cite as: 2007 WL 2893637 (S.D.Ill.))**

First, the complaint must describe the claim in suf-
ficient detail to give the defendant 'fair notice of
what the ... claim is and the grounds upon which it
rests.'Second, its allegations must plausibly suggest
that the plaintiff has a right to relief, raising that
possibility above a 'speculative level'; if they do
not, the plaintiff pleads itself out of court.

*E.E.O.C. v. Concentra Health Services, Inc.,* 2007
WL 2215764, 2 (7th Cir.2007) (citations omitted).

**2. Federal Rule of Civil Procedure 9(b)**

**\*2** Defendant argues that several counts in
Plaintiffs' complaint must be dismissed due to their
failure to plead the fraud claims with the particular-
ity demanded by **Federal Rule of Civil Procedure
9(b).** Plaintiffs disagree.

**Federal Rule of Civil Procedure 9(b)** states that
"[i]n all averments of fraud or mistake, the circum-
stances constituting fraud or mistake shall be stated
with particularity."FN1 This heightened pleading re-
quirement is premised upon a desire "to minimize
the extortionate impact that a baseless claim of
fraud can have on a firm or an individual."*Fidelity
Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins.
Co.,* 412 F.3d 745, 748 (7th Cir.2005); *see also
Ackerman v. Northwestern Mutual Life Ins. Co.,*
172 F.3d 467, 469 (7th Cir.1999). The purpose of
the requirement is to "force the plaintiff to do more
than the usual investigation before filing his com-
plaint," a task that is warranted in light of the "great
harm" that can result to company or individual
upon the filing of a fraud action. *Ackerman,* 172
F.3d at 469;*see also Fidelity Nat'l Title Ins. Co.,*
412 F.3d at 749 (noting that **Rule 9(b)**"forces the
plaintiff to conduct a careful pretrial investigation
and thus operates as a screen against spurious fraud
claims"). In order to meet **Rule 9(b)'s** strictures and
survive dismissal, a plaintiff must generally allege
the who, what, where, and when of the alleged
fraud. *Ackerman,* 172 F.3d at 469;*DiLeo v. Ernst &
Young,* 901 F.2d 624, 627 (7th Cir.1990); *see also
Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20

F.3d 771, 777 (7th Cir.1994) ( "[Rule 9(b) ] re-
quires 'the plaintiff to state "the identity of the per-
son who made the misrepresentation, the time,
place and content of the misrepresentation, and the
method by which the misrepresentation was com-
municated to the plaintiff." ' " (citations omitted)).

> FN1. All fraud actions proceeding in feder-
> al court are subject to **Rule 9(b)'s**
> heightened standard, regardless of whether
> they are based on state or federal law. *Ack-
> erman v. Northwestern Mutual Life Ins.
> Co.,* 172 F.3d 467, 470 (7th Cir.1999)
> (citing *Herman & Maclean v. Huddleston,*
> 459 U.S. 375, 387-89 (1983)).

**B. Analysis**

**1. Claims against Rusty Carroll**

Defendants assert that Plaintiffs have no cause of
action against Defendant Rusty Carroll as an indi-
vidual. Plaintiffs disagree. Plaintiffs argue that the
Complaint alleges sufficient facts to hold Carroll li-
able based on his own individual acts, separate and
apart from Carroll's involvement with R2C2, Inc.
The Court agrees.

As Plaintiffs' point out, on the date the Complaint
was filed all of the very websites where the alleged
activities occurred were registered to Rusty Carroll,
and only Rusty Carroll. This alone is enough to
hold Carroll individually liable for any activity that
occurs on websites registered in his name; however,
even if this were not the case, the Court finds that
Plaintiffs have alleged sufficient facts to pierce the
corporate veil.

In Illinois, "a corporation is a legal entity separate
and distinct from its shareholders, directors and of-
ficers, and, generally, from other corporations with
which it may be affiliated."*Van Dorn Company v.
Future Chemical and Oil Corp.,* 753 F.2d 565, 569
(7th Cir.1985) (citing *Main Bank of Chicago v.
Baker,* 427 N. E.2d 94 (Ill.1981)). However, a cor-
porations' separate and distinct entity will be dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regarded and the veil of limited liability pierced when two requirements are met: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."*Van Dorn,* 753 F.2d at 569-70 753 F.2d at 569-70 (quoting *Macaluso v. Jenkins,* 420 N.E.2d 251, 255 (Ill.1981)). At the pleading stage, Plaintiffs need not prove each of these factors. Rather, they merely need to have pled facts sufficient to support a plausible claim that both prongs have been met under the more liberal standard of notice pleading of **FEDERAL RULE OF CIVIL PROCEDURE 8.**

*\*3* In determining whether unity of interest exists, courts consider the following factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) an individual treating the assets of another corporation as its own. *Van Dorn,* 753 F.2d at 570. Another factor is the "unlawful motive or intent" of the individual. *Trustees of the Pension, Welfare and Vacation Fringe Benefits Funds v. Favia Elec. Co. Inc.,* 995 F.2d 785, 789 (7th Cir.1993). Lastly, a court may consider additional factors as the "nonfunctioning of other officers or directors" and "whether the corporation is a mere facade for the operation of dominant stockholders."*Ted Harrison Oil Co. v. Dokka,* 247 Ill.App.3d 791, 795, 187 Ill.Dec. 441, 617 N .E.2d 898 (1993).

Plaintiffs have satisfied their burden at this stage. First, Plaintiffs allege that Rusty Carroll is a "significant (if not sole) shareholder of R2C2."(Doc. 2, ¶ 4.) The Complaint further alleges that Rusty Carroll used R2C2 as a facade for his own illegal activities. (Doc. 2, ¶¶ 93, 95, 97.) In addition, the Complaint alleges that Rusty Carroll and R2C2 commingled funds and rights by being, at times, joint registrants for the term paper websites. (Doc., ¶¶ 43-47.) Furthermore, as joint registrants,

Carroll and R2C2 jointly owned the materials. This also equates to a commingling of assets. Lastly, Plaintiffs allege that public records indicate that R2C2 has only $1,000 of capital, an amount far insufficient to cover the expenses of R2C2. Clearly this undercapitalization raises a strong inference that funds are being commingled. For all of these reasons, the Court finds that Plaintiffs have pled sufficient facts to suggest a unity of interest between Carroll and R2C2.

Defendants only address the unity of interest prong. Defendants do not claim that Plaintiffs have failed to allege facts sufficient to support the second prong: adherence to the separate identities would sanction a fraud or promote injustice. Plaintiffs 32-page Complaint is replete with allegations of fraud. Clearly Plaintiffs have satisfied this prong. Accordingly, the Court finds that Plaintiffs have pled sufficient facts to proceed with their claims at this point against Carroll, both as an individual, and through an alter ego theory.

## 2. Copyright Infringement Claim-Count I

Defendants claim that Plaintiffs have failed to plead with sufficient specificity a claim of copyright infringement. The Seventh Circuit has held that complaints must merely allege "present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant...."*Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.1993) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1237, at 283 (1990). Defendants seem to ignore that Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 108 in each of the Counts. Instead, Defendants focus their arguments solely on the paragraphs under Count I. However, looking at the allegations contained not only under Count I, but also the allegations contained in paragraphs 1 through 108, it is clear that Plaintiffs have properly plead a copyright infringement claim. First, Plaintiffs allege that they own the copyright to the Native Dyes Manuscript. (Doc. 2, ¶

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110.) In addition, Plaintiffs allege that they have registered their copyright with the United Stated Copyright Office. (*Id.,* ¶ 111,*see also* Exhibit 9, Copyright Registration). The Copyright Registration shows that the effective date of registration is May 15, 2006. (*Id.*) Lastly, Plaintiffs have attached to their Complaint an exhibit showing that Defendants offered the Native Dyes Manuscript after May 15, 2006. (*Id.,* Ex. 8.) The Court finds that Plaintiffs have satisfied the pleading requirements for a copyright infringement claim. This claim will not be dismissed.

### 3. False Designation of Origin Claim-Count II

**\*4** Plaintiffs allege that Defendants "have made false or misleading representations of fact likely to cause consumer confusion related to the goods or services offered through Carroll's Term Paper Web Sites" in violation of the **Lanham Act, 15 U.S.C. § 1125(a).**FN2 (Doc. 2, ¶¶ 117, 119.)

> FN2.15 U.S.C. § 1125(a) provides:
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants argue that Plaintiffs false designation of origin claim is barred by the holding in *Dastar Corp. v. Twentieth Century Fox Corp.,* 539 U.S. 23 (2003). In *Dastar,* the United States Supreme Court considered whether Dastar had violated the **Lanham Act** when it released a video set that it made from tapes of the original version of a series, whose copyright had expired, produced by Fox. Dastar did not give credit to Fox. The question was whether this constituted "reverse passing off" in violation of **§ 43 of the Lanham Act.**

The Supreme Court determined that the case hinged on the Act's definition of the "origin" of "goods." The Supreme Court concluded

reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which *were* ), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Dastar,* 539 U.S. at 37. In the present case, Plaintiffs argue that Defendants have taken Plaintiffs works and repackaged them as their own. It is true that the Supreme Court stated in *Dastar* that "had defendant bought some of plaintiff's videotapes and 'merely repackaged them as its own,'"this would have been a proper false designation of origin claim."*Id.* at 31.But this is merely dicta. This Court's understanding of *Dastar* is that it interprets the **Lanham Act's** use of the phrase the origin of goods to narrowly mean the "producer of the tangible product sold in the marketplace" and *not*"the person or entity that originated the ideas or communications that 'goods' embody or contain."*Id.* The fact that the "product" (i.e., the manuscript) in this case is nothing more tangible

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

than the idea or communication that it embodies, particularly since there is nothing tangible about the information exchanged over the internet, confounds this analysis, but only slightly. Given the limits the Supreme Court has placed on its interpretation of the "origin of goods," the Court does not believe that Plaintiffs may proceed on this claim. Therefore, Count II is dismissed.

**4. Preemption of State Law Claims by Copyright Act**

Defendants claim that three counts-Count III, V, and VI-should be dismissed because they are preempted by the Copyright Act. Preemption requires an analysis of congressional intent behind the federal law at issue. Such intent may be either expressly or impliedly given by Congress. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 338, 104 S.Ct. 615, 621 (1984). Express preemption is given when "Congress' command is explicitly stated in the statute's language...."*Fidelity Fed. Savings & Loan Assoc. v. De la Cuesta,* 458 U.S. 141, 152-53, 102 S.Ct. 3014, 3022 (1982). The Copyright Act provides:

**\*5** all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The question, then, is whether any of the claims asserted under state law are equivalent to the rights specified under section 106 of the Copyright Act. The Seventh Circuit has held that "to avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from

that governed by federal copyright law-i.e., conduct other than reproduction, adaptation, publication, performance, and display."*Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 910 (7th Cir.2005). In addition, a state law will not be preempted even if it regulates the same conduct as long as it requires additional elements to make out a cause of action and the elements "differ in kind from those necessary for copyright infringement."*Baltimore Orioles, Inc. v. Major League Baseball Players,* 805 F.2d 663, n. 26 (7th Cir.1986). With these principles in mind, the Court considers each claim below.

**a. The Uniform Deceptive Trade Practices Act and Common Law Unfair Competition-Count III and V**

Plaintiffs allege that Defendants have violated the Illinois Deceptive Trade Practices Act ("IDTPA") FN3 by making "false or misleading descriptions of fact, or false or misleading representations of fact, in connection with Defendants goods or services."(Doc. 2, ¶ 123.) In addition, Plaintiffs claim that Defendants have engaged in unfair business procedures in violation of Illinois' unfair competition common law. Defendants argue that Plaintiffs' claims of deceptive trade practices and unfair business practices are preempted by the Copyright Act.

> FN3. The UDPTA states:
>
> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, con-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893637 (S.D.Ill.)
**(Cite as: 2007 WL 2893637 (S.D.Ill.))**

nection, or association with or certification by another;

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

Because there is overlap between the UDTPA and

the Copyright Act, the Court must look to the specific allegations contained in the Complaint to determine whether the UDTPA offers some additional right or entitlement from the Copyright Act, which would preclude a finding of preemption. Defendants cite a case where a district court found that the UDTPA claim in that case was preempted by the Copyright Act, but the facts in that case are distinguishable. *Natkin v. Winfrey,* 111 F.Supp.2d 1003 (N.D.Ill.2000). In that case, the Plaintiff had merely asserted "a garden variety copyright violation." *Id.* at 1014.Defendants rely on this lone case to assert that Plaintiffs' deceptive trade practices and unfair business practices are preempted.

However, in the present case, Plaintiffs have alleged an additional element not required by the Copyright Act: likelihood of confusion. While this element alone would not bar preemption, the conduct complained of under the UDPTA and unfair competition is qualitatively different than the conduct prohibited under the Copyright Act. Unfortunately, the Court is unable to find any Seventh Circuit cases on point. Nevertheless, the district court case relied upon by Plaintiffs has facts much more similar to the present case and is, therefore, instructive. "An infringement of a copyright does not necessarily create confusion as to the endorsement of one's products or the affiliation between two entities. The nature of this UDTPA action is essentially focusing on the confusion created regarding the 'relationship' between the [plaintiffs and defendants]. The court finds such an action escapes preemption."*Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.,* 988 F.Supp. 1194, 1199 (N.D.Ill. 1998). At this point, the Court cannot say that Plaintiffs' deceptive trade practices and unfair competition claims are preempted.

**b. Unjust Enrichment-Count VI**

**\*6** Defendants assert that Plaintiffs unjust enrichment claims are preempted because "[s]uch unjust enrichment claims are routinely dismissed in these circumstances because they seek to enforce through

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893637 (S.D.Ill.)
**(Cite as: 2007 WL 2893637 (S.D.Ill.))**

state law a right that is exclusively defined under the Copyright Act."(Doc. 11, p. 14.) This is the extent of Defendants argument. Furthermore, Defendants do not cite a single Seventh Circuit case in support of this assertion, but instead cite, without discussion, a number of cases from other circuits. It is a waste of the Court's time to take up issues that have not been even remotely briefed. The Court will not dismiss this claim.

### 5. RICO Claims-Count VII and VIII

Defendants argue that Plaintiffs have failed to meet the heightened pleading requirements for claims alleging fraud under **Federal Rule of Civil Procedure 9(b).** Defendants assert that Plaintiffs "allege no specific facts specifying the time, place and content of the allegedly false wire communication."(Doc. 11, p. 15.) The Court disagrees.

Again, it appears as though Defendants have failed to consider paragraphs of the Complaint that Plaintiffs incorporate by reference under specific counts. As noted above, **"[Rule 9(b) ]** requires 'the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."'*Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) (citations omitted). Plaintiffs have *clearly* articulated the who (Rusty Carroll and R2C2)(Doc. 2, ¶¶ 3-4), the time (all times following May 15, 2005, the date Plaintiffs' copyright of the manuscript became effective) (Ex. E), the place (the Carroll term paper websites) (Doc. 2, ¶¶ 42-58), the content of the misrepresentation (claiming to have purchased from professionals the materials offered for sale on the website) (*Id.*), and the method by which the misrepresentation was communicated (over the internet-clearly a form of wire communication) (*Id.*)Given the thoroughness of Plaintiffs' allegations of the fraud perpetrated by Defendants, the Court is quite frankly bewildered that Defendants could even argue that Plaintiffs have failed to meet

the pleading requirement under **Rule 9**. The Court will obviously not dismiss these claims.

### 6. Illinois Consumer Fraud and Deceptive Business Practices Act-Count IV

Defendants again claim that Plaintiffs have failed to sufficiently plead allegations of fraud, this time under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Deceptive Practices Act"). As discussed above, the Court finds this simply not to be true.

Lastly, Defendants claim that Plaintiffs lack standing to sue under the Deceptive Practices Act because they are not consumers and have not suffered a pecuniary loss. Under the plain language of the statute, "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."**815 ILCS 505/10a(a).** Furthermore, the Act defines the term "person" as well as the term "consumer." **815 ILCS 505/1 (c) and (e).** Based on this language, the Court does not believe that Plaintiffs must be consumers to bring claim. *See also Scarsdale Builders, Inc. v. Ryland Group, Inc.,* 911 F.Supp. 337, 338 (N.D., Ill.1996); *P.I.A. Mich. City, Inc. v. National Porges Radiator Corp.,* 789 F.Supp. 1421, 1428 (N.D.Ill.1992). Finally, Plaintiffs have asserted that they have suffered "actual damages" in that 1) the manuscript's commercial value has been damaged by the Defendants unauthorized use of the paper and 2) Plaintiffs have suffered damage to their reputation. Whether Plaintiffs are able to prove actual damages remains to be seen. But, at this point, Plaintiffs have asserted sufficient facts to allege "actual damages."

### IV. *Conclusion*

**\*7** For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss on Counts I, III, IV, V. VI, and VII (Doc. 11), but **GRANTS** Defendant's Motion to Dismiss as to Count II pursuant to **FEDERAL RULE OF CIVIL PROCEDURE**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2893637 (S.D.Ill.)
**(Cite as: 2007 WL 2893637 (S.D.Ill.))**

**12(B).**

**IT IS SO ORDERED.**

S.D.Ill.,2007.
Weidner v. Carroll
Slip Copy, 2007 WL 2893637 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.