**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NOVA DESIGN BUILD, INC, and ANNEX BUILDERS LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 CV 2855 |
| | ) | |
| GRACE HOTELS, LLC, et al., | ) | Judge Der-Yeghiayan |
| | ) | |
| Defendants. | ) | |

**THE LYONS DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION
TO THE LYONS DEFENDANTS' MOTION TO DISMISS COUNTS I, VI AND VII OF
THE COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Defendants Lyons Design Group, Inc. and Adam Lyons ("Lyons Defendants"), by their

attorneys, Sabo & Zahn, reply to Plaintiffs' Response in Opposition to the Lyons Defendants'

Motion to Dismiss Counts I, VI and VII of the Complaint for Injunctive and Other Relief

("Response"):


LICENSE (COUNT I)

Plaintiffs rely on the case of Conley v. Gibson, 355 U.S.41 (1975) and its progeny in

setting forth the standards for pleadings and motions attacking such pleadings.  This reliance was

fine until the Supreme Court effectively reversed Conley in Bell Atlantic v. Twombly, 127 S.Ct.

1955, 1969 (2007) ("We could go on, but there is no need to pile up further citations to show that

Conley's "no set of facts" language has been questioned, criticized, and explained away long

enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted

pleading standard . . . .").

Plaintiffs' argument, apparently, is that the express license granted by the contract between Plaintiff Nova Design Build ("Nova") and Defendant Grace Hotels ("Contract," attached as Exhibit "A" to the Complaint for Injunctive and Other Relief ("Complaint") ) might, possibly, in some remote way, be read as something other than what it says, pursuant to the pleading standards under Conley. This express license (" 9. The Owner agrees not to use any drawings received from Nova Design Build, Inc. for bidding, permit or construction purposes unless and until Nova Design Build, Inc. is paid in full for all the invoices due for Part I.") can only be subject to one interpretation: if Nova is fully paid, then the Owner (Defendant Grace Hotels ("Grace")) can, indeed, use the Nova drawings to build the building.

The Complaint goes on to admit that Nova was, indeed, paid in full, albeit apparently begrudgingly. See the Complaint, at ¶ 42 ("Nova was ultimately forced to accept $18,000 of the more than $28,000 to which it was entitled."). Therefore, according to the Complaint, Grace enjoyed a license to use Nova's drawings for "bidding, permit" and "construction purposes." This is, according to the Complaint, all that was done. The Complaint alleges that Nova and its partner, Plaintiff Annex Builders, were not retained for "construction purposes." In fact, the Contract contemplates such an event: "In the event the Owner decides not to hire Annex Builders LLC for construction . . . ." Exhibit "A" to the Complaint, at p. 2. Thus, the drawings could be used for construction purposes, even if Annex Builders was not hired, so long as payment was made to Nova. Again, the Complaint admits that such payment was made.

Nova does not allege that the drawings were used at some other site. It does not allege that the drawings were used to construct another project. They were used for this very same project, just as in IAE v. Shaver, 74 F.3d 768 (7th Cir. 1996). While Shaver was not paid his fee,

2

Nova was paid.  Just as in Shaver, the drawings here were allegedly used and altered by another

architect to complete the very same project.

The Plaintiffs do not argue that Nova's plans were used for any purpose other than that

for which the architect's work was used in Shaver.  Instead, the Plaintiffs attempt to split hairs

over the scope of the license Nova wrote into its form Contract.  However, this same scope

argument was considered and rejected in Shaver.  See id. at 777 - 778 ("Mr. Shaver submits that,

even if there was an implied license for the use of his drawings, the Airport, Cantrell and Joint

Venture exceeded the scope of that license by allowing another architect . . . to use the designs .

 . . . Mr. Shaver's assertion that he did not grant the right to further use of his drawings unless he

was the architect continuing the Project is simply not supported *by the contract*.") (emphasis

added).  Indeed, if one were to read Nova's form Contract so as to limit the scope of the license

to the extent advocated by Nova, it would be tantamount to writing the license out of the

Contract.

The Response also makes much of a letter sent by Mr. Shaver long after the contract had

been entered into and his work completed.  Response, ¶ 9.  However, that letter had little or no

bearing on the outcome of Shaver.  The license in Shaver was implied into the contract between

the owner and architect, not any correspondence between the parties.[1]

The Response cites no authority whatsoever with regards to the license issue other than

Shaver itself.  The Defendant owner, Grace, was the recipient of a license from Nova to make use

of its architectural drawings, for which Nova was paid in full, in order to proceed with the

_____

[1]  Again, the instant case is an even stronger one of license than was Shaver given that
Nova, via its form Contract, actually conveyed an express license.  See Exhibit "A" to the
Complaint, at ¶ 9.

Holiday Inn Express project in Waukegan.  Therefore, the Lyons Defendants' utilization of

Nova's design, if any, was authorized pursuant to said license.

<u>THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (COUNT VI)</u>

Plaintiffs do not question that Illinois courts follow the Lanham Act in resolving disputes

based on the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 -

510/7.  Rather, they attack the Lyons Defendants' assertion that the case of <u>Dastar Corp. v.</u>

<u>Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003), preempts Lanham Act claims and, by

extension, preempts claims under the UDTPA.  They cite <u>Weidner v. Carroll</u>, No. 06 CV 00782,

2007 WL 2893637 (S.D.Ill.  Sept. 28, 2007) in support of their position.  Unfortunately, <u>Weidner</u>

does not say what Plaintiffs claim, i.e., that the Copyright Act does not preempt the UDTPA

("there is no such preemption").  What <u>Weidner</u> does say is "the Court must look to the specific

allegations contained in the Complaint to determine whether the UDTPA offers some additional

right or entitlement from the Copyright Act, which would preclude a finding of preemption."  <u>Id</u>.

at * 5.

Of course, the unpublished trial court opinion in <u>Weidner</u> is not binding.  To the extent

that <u>Weidner</u> is deemed to stand for that for which the Plaintiffs would like it to stand, no

preemption, other courts have disagreed and followed the United States Supreme Court's <u>Dastar</u>

holding, via published opinions no less.  See <u>Zyla v. Wadsworth</u>, 360 F.3d 243, 251 - 52 (1ˢᵗ Cir.

2004) (applying <u>Dastar</u> to preempt Lanham Act claim based on no credit given for copyrighted

textbook); <u>General Universal Sys. v. Lee</u>, 379 F.3d 131, 149 (5ᵗʰ Cir. Tex. 2004) (applying <u>Dastar</u>

to preempt Lanham Act claim based on reverse passing off of copyrighted software); <u>Bob</u>

<u>Creeden & Assocs., Ltd., v. Infosoft, Inc</u>., 326 F.Supp.2d 876 (N.D.Ill. 2004) (dismissing

Lanham Act and Illinois UDTPA claims, based on <u>Dastar</u>).

Plaintiffs have cited a single unpublished opinion for the proposition that <u>Dastar</u> does not

require Lanham Act and UDTPA claims to be dismissed because of Copyright Act preemption.

However, the overwhelming authority is just the opposite.  Count VI should be dismissed.


<u>TORTIOUS INTERFERENCE (COUNT VII)</u>

Plaintiffs argue that Count VII should not be dismissed because they were coerced into

accepting final payment by the owner, Grace.  They further argue that there was no consideration

for the modification to the Contract (the settlement between Grace and Nova).  However, the

Complaint reads as follows: "42.  Grace threatened to withhold all future payments, and to

replace Nova unless it agreed to forego a substantial portion of the amounts that it was owed.

Nova was ultimately forced to accept $18,000 of the more than $28,000 to which it was entitled."

By Plaintiffs' own admission, Grace paid $18,000 in consideration.  In fact, based upon the last

part of the Contract ("Any modification required in the drawings for coordination purposes will

be executed by Nova Design Build, Inc. without additional fee in timely manner."), there was

additional consideration to Nova by virtue of not having to perform modifications for free.[2]

In <u>Golden v. McDermott, Will & Emery</u>, 299 Ill.App.3d 982, 992, 702 N.E.2d 581, 588

(1st Dist. 1998), the court defined "economic duress":  "Economic duress occurs where 'undue or

unjust advantage has been taken of a person's economic necessity or distress to coerce him into

making the agreement.' 12 Ill.L. & Prac. Contracts § 142 (1983).  These dire circumstances must

---

[2]  According to the Complaint, these modifications were done by Lyons and Walz.

be such as to overbear the will of the plaintiff." Here, the dispute apparently was about Nova suspending its services until fees for alleged "extras" were paid, while at the same time Nova took the position that it was released from any "further architectural or engineering responsibilities" due to the failure to hire Annex within thirty days of completion of the permit drawings. See the Complaint, at ¶¶ 39, 41. Note that $15,000 of this disputed fee was expressly paid in order to allow Grace not to hire Annex. See the Complaint, at ¶ 39. See also Exhibit "A" to the Complaint, at p. 2.

In the present case, Nova's situation just does not fit the Golden definition of coercion or economic duress, even accepting as true the allegations of the Complaint. Put simply, Nova could have declined to accept the $18,000 final payment from Grace. In accordance with the Bell Atlantic pleading standards, Count VII should be dismissed.

CONCLUSION

The Contract, Exhibit "A" to the Complaint, included an express license to use the drawings to complete the project. In other words, the Defendants were licensed to do exactly what the Complaint alleges was improperly done. Furthermore, the count for deceptive trade practices must be dismissed pursuant to the law of Dastar. Finally, Plaintiff's argument as to the count for tortious interference simply lacks merit, as there was a final payment in full tendered by Grace to Nova. For these reasons, Counts I, VI and VII of the Complaint should be dismissed.

Wherefore, Defendants Lyons Design Group, Inc. and Adam Lyons, request that:

A.    Counts I, VI and VII of the Complaint for Injunctive and Other Relief be dismissed; and

B.    such additional relief be allowed as is just.

6

**SABO & ZAHN**


By:  /s/ Werner Sabo_____


Werner Sabo (No. 3128735)
Shawn E. Goodman (No. 6216155)
Attorneys for the Lyons Defendants
Sabo & Zahn
401 N. Michigan Avenue
Suite 2050
Chicago, IL 60611
(312) 655-8620 (phone)
(312) 655-8622 (fax)
wsabo@sabozahn.com
sgoodman@sabozahn.com

X:\Business\BUSINESS\Lyons\Grace Hotels 2\Motions\Reply2.wpd